10-1320-cv
Hill v. Curcione.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2010

Docket No. 10-1320-cv

Submitted: May 19, 2011            Decided: September 15, 2011

_____

MASHAMA HILL,

*Plaintiff-Appellant*,

- v. -

PAUL CURCIONE, JEFF CHAWER, TAMMY WILLIAMS
CHRIS ATKINS, JAMES HOHENSEE,

*Defendants-Appellees*.

_____

Before: MINER, CABRANES and STRAUB, Circuit Judges.

Appeal from order dismissing complaint against medical providers at the Niagara County Jail for failure to state a claim and from summary judgment dismissing claims against corrections officers at the jail for lack of a triable issue of fact, both entered in the United States District Court for the Western District of New York (Skretny, J.), in an action alleging the application of excessive force and deliberate indifference to medical needs, the District Court having determined, inter alia, that plaintiff-appellant had failed to exhaust his administrative remedies.

Affirmed in Part; Vacated in Part and Remanded.

Mashama Hill, pro se, Niagara Falls, New York.

Joel J. Java, Roach, Brown, McCarthy & Gruber, P.C., Buffalo, New York, for Defendants-Appellees Chris Atkins and James Hohensee.

Mark C. Davis (Charles E. Graney, on the brief), Webster Szanyi LLP, Buffalo, New York, for Defendants-Appellees Paul Curcione, Jeff Chawer, and Tammy Williams.

1

MINER, Circuit Judge:

Plaintiff-appellant Mashama Hill appeals pro se from a March 20, 2008 order (the "Order") dismissing his complaint as against the defendants-appellees Christopher Aikin (named in the complaint as Chris Atkins) and James E. Hohensee, M.D. (named in the complaint as James Hohensee) for failure to state a claim. Pleaded in the complaint against Hohensee and Aikin, medical care providers at the Niagara County Jail (the "Jail"), were claims for deliberate indifference to Hill's medical needs during his incarceration at the Jail. Hill also appeals from a March 24, 2010 judgment (the "Judgment") dismissing his claims against the remaining defendants-appellees, Paul Curcione, Jeff Chawer, and Sergeant Tammy Williams, Corrections Officers at the Jail. These claims included allegations of excessive force on the part of the named Corrections Officers during Hill's confinement at the Jail. Both the Order and the Judgment were entered in the United States District Court for the Western District of New York (Skretny, J.), each supported by a Report and Recommendation by Magistrate Judge Hugh B. Scott. For the reasons that follow, we affirm the Order dismissing the claims against Hohensee and Aikin and affirm the summary judgment dismissing the claim against Williams. We vacate and remand the summary judgment insofar as it dismisses the claims against Curcione and Chawer.

## BACKGROUND

### I. Injury and Treatment

Hill alleges that, on March 28, 2007, while confined at the Jail, he "asked to be removed from Pod Two and placed in the block area after having been told that he would have to perform two particular cleaning details, three (3) days in a row by an officer Carissa Allen."[1] Shortly thereafter, according to Hill, "the Pod was ordered to lock in," and Curcione and Chawer

---

[1] A Pod is an inmate housing area divided into manageable size units typically with single occupancy cells clustered around a common area and secure control booth. See William "Ray" Nelson, New Generation Jails, National Institute of Corrections, Jails Division, Boulder, Colorado, available at http://prop1.org/legal/prisons/97jails.htm (last visited Sept. 9, 2011).

approached his cell along with other officers and ordered him to prepare to move. After putting on his sneakers, Hill was ordered to approach the cell door, turn around with his back to the door, get on his knees, and put his hands behind his head. The cell door then was opened and Hill was handcuffed. At that time, he alleges, he "was struck in the upper torso [and] head area several times by Officer Curcione." He was then led out of his cell into the Pod B sallyport,[2] where Curcione and Chawer slammed him against the wall several times. Hill says he then began to resist the officers to prevent being forced to the floor.

With his hands cuffed behind his head and with his torso and arms strapped in by an emergency response belt, Hill ultimately was thrown to the floor face down. He asserts that Curcione and Chawer then "beg[a]n to tighten the handcuffs [and] bind his wrist solely as a means to cause injury." He avers that he ceased resisting at this point. The officers then bent his legs across one another as Hill remained face down on the floor. At that point, Sergeant Williams, the Tour Supervisor, appeared on the scene. Curcione reported to Williams that Hill had been resistant and force was needed to subdue Hill. When Hill said that Curcione was lying and that the officers had assaulted him, Williams purportedly instructed Hill to "shut up."

Hill continued to complain that his handcuffs were too tight and alleges that the "Officers put a facemask on [him], causing his breathing to stop, while lifting him from the floor." He asserts that he then "was carried from Pod 2 sallyport, to the elevator, and then down to isolation." Placed in an empty cell with the handcuffs still on his wrists, Hill claims that he was not seen until the next afternoon by a nurse after complaining to an officer in the Segregation Unit. He was seen by a physician's assistant two days after the incident, complaining "that his hands were damaged by cuffs and [that he] suffered from extreme pain [and] numbness caused by nerve damage." An X-ray revealed a broken bone in Hill's wrist, and a cast was placed on

---

[2] A sallyport is a term often used to describe "the secured area [of a prison] where officers and other individuals pass into the institution or enter particular areas of the prison." Sallyport Definition, Juridical Dictionary.com, http://www.juridicaldictionary.com/Sallyport.htm (last visited Sept. 9, 2011).

the wrist on April 6, 2007, nine days after the injury occurred.

On April 19, 2007, Aikin, a Nurse Practiticner, confronted Hill with an officer's report that Hill had been working out doing push-ups and pull-ups during recreation. Aikin, who had provided Motrin pain medication for Hill, was told "that the officer's allegations were not exact and were an attempt to impede [Hill's] endeavors in filing a law suit against [Aiken's] fellow colleagues in that [Hill] had informed him (Officer Tim Blackley) of [Hill's] intent to do such." Hill continued to complain of pain, asserting that Motrin was insufficient as pain medication and opined that he should have been "referred for a nerve conduction study." Hill asserted in his Statement of Facts appended to his complaint that he would soon be placed in the custody of the State Department of Correctional Services, "so the Doctor [and] Nurse Practitioner believe that the Department of Correctional Services should deal with Plaintiff's issues. This is what both defendant Hohensee [and] [Aikin] had expressed verbally to Plaintiff."

The version of the events leading to Hill's injury put forward by the Corrections Officer defendants is somewhat different. According to the Officers, the events unfolded as follows: Sergeant Williams, the Tour Supervisor at the Jail on March 28, 2007, received a call from Corrections Officer Carissa Allen that Hill was refusing to perform his cleaning detail and was using vulgar and obscene language toward Allen. After determining that Hill had used abusive language toward Allen in the past and that the conduct was recurring, Willams "decided [Hill] should be written up and moved to punitive segregation for his disruptive behavior." Accordingly, Sergeant Williams "instructed the Correctional Emergency Response Team (CERT) Squad leader, Paul Curcione and another CERT member, Jeffrey Chawer, to proceed to plaintiff's cell and escort him to punitive segregation."

Responding to that instruction, Officer Curcione states that, upon arrival "outside [Hill's] cell, [he] informed [Hill] that [Hill] was charged with jail rule infractions and ordered him to turn around and put his hands behind his back." Instead of doing so, Hill began to pack his belongings and, when advised that an officer would pack his belongings for him and again

4

ordered to turn around and place his hands behind his back, Hill "became boisterous and yelled, 'I will pack my shit.'" Fearful that Hill would provide further resistance and aware that Hill was a man approximately 6'5" tall with a weight of approximately 240 pounds, Curcione ordered Hill into a kneeling position.

When Hill went to a kneeling position, Curcione entered the cell with Officer Chawer. The officers met resistance when they attempted to secure Hill's hands behind his back. Curcione asserts that it was necessary to apply "wrist compliance" to control Hill's right wrist for placement in the handcuffs. He describes wrist compliance as "manipulating the wrist joint and pressure points to gain control of a resistant inmate. The use of wrist compliance is standard operating procedure and pursuant to training received by a CERT officer."

After Officers Curcione and Chawer escorted Hill out of his cell, Hill again resisted the officers and attempted to pull away from them while yelling obscenities and refusing to obey verbal commands to cease his disorderly conduct. The officers then placed Hill on the floor and attempted to gain control of his legs as he kicked at Officer Chawer and continued to struggle. Additional officers were called to the scene and the officers then present were able to take control of Hill's torso and secure his legs with an Emergency Response Belt. Hill then was carried to an observation cell where the handcuffs and belt were removed. During the course of the incident, Hill threatened Curcione with physical harm several times.

II.     Grievance and Disposition

On April 7, 2007, Hill filed a grievance dated April 5, 2007, asserting that he was assaulted on March 27, 2007, by Officers Curcione and Chawer "as well as others." In describing his injuries on the Grievance Form, Hill alleged that he "sustained serious hand and wrist injuries as the result of misuse of handcuffs [and] force." He noted that he later was "seen by a doctor or P.A." and "was given an X-ray that revealed a wrist fracture." Noting that he had made two earlier complaints requesting pain medication and a nerve conduction study "but received nothing," Hill wrote that he still was "experiencing extreme pain [and] loss of sensation

5

in his hands." The Grievance Form was received by the Grievance Coordinator at the Jail on April 7, 2007.

By Decision dated April 13, 2007, the Grievance Coordinator recognized Hill's claim that he was assaulted and determined that "[t]here is no evidence to support [Hill's] allegation of any wrong doing by any officer." The Decision also advised that only the Jail physician, Dr. Hohensee, could authorize the tests Hill requested and that Hill was to fill out a "request slip" if he was "experiencing pain." Hill checked a box on the form on which the Decision was given. Next to the box were the words: "I wish to appeal to the Chief Administrative Officer." Hill signed that request and dated it April 14, 2007.

Responding to Hill's request to appeal, and on the same form as the grievance, the Chief Administrative Officer for the Jail, Captain Vandetta, wrote the following decision: "As per minimum standards Section 7032.4(J) you have 2 (two) business days to appeal. Your above date is not correct that you wrote. This was turned in with [two grievances] dated 4/25/07." This decision was signed by Captain Vandetta on April 26, 2007. Although Hill requested a further appeal and so indicated on the form, Captain Vandetta wrote: "This is no longer grievable."

III.    Proceedings in the District Court

In his complaint, brought pursuant to 28 U.S.C. § 1983 and filed on June 5, 2007, Hill alleged as to both Curcione and Chawer: that acting under the color of state law, each "assaulted plaintiff by deliberately tightening handcuffs around his wrist and bending his hand, breaking his wrist and causing serious [and] permanent nerve damages [sic], which is an Eighth Amendment violation of the U.S. Constitution." Hill also alleged that Sergeant Williams violated his Eighth Amendment rights by being "deliberately indifferent to plaintiff's suffering at the hands of officers under her supervision."

As to Nurse Practitioner Aikin, Hill alleged that Aikin acted under color of state law "when he denied plaintiff medical care — that is, pain medication [and] nerve conduction study

6

— leaving him to needlessly suffer," all in violation of the Eighth Amendment. The complaint repeats the same allegations against Dr. Hohensee and includes a further allegation that Hill has exhausted his administrative remedies.

On October 5, 2007, defendants Aikin and Hohensee filed a motion to dismiss the action as against them for failure to state a claim, noting the paucity of allegations referring to any medical treatment they may have provided. By Order filed on March 20, 2008, the District Court, adopting the February 28, 2009 Report & Recommendation of Magistrate Judge Scott over Hill's objections, granted the motion. The Report & Recommendation stated:

> Although the plaintiff alleges that he should have been given different pain medication and be sent for a nerve conduction study, the plaintiff does not assert any medical basis for these claims. At best, the plaintiff disagrees with the various medical professionals as to the nature and treatment of the medical services he received. More importantly, the plaintiff fails to assert any allegations or basis to find that Aikin and Hohensee acted with a sufficiently culpable state of mind to find that they knowingly acted to disregard an excessive risk to Hill's health.

By motion filed on March 31, 2009, Curcione, Chawer, and Williams sought summary judgment dismissing all claims against them, claiming, inter alia, that they were entitled to qualified immunity, that the force used against Hill was reasonable, that Hill failed to exhaust his administrative remedies and that Hill had failed adequately to allege a failure to protect claim. By order entered on March 23, 2010, the District Court adopted the February 21, 2010 Report & Recommendation of Magistrate Judge Scott over Hill's objections and granted summary judgment as requested. Dismissal was based on failure to exhaust administrative remedies. Noted in the Report & Recommendation were the facts that Hill's injuries occurred on March 28, 2007, and that he filed his grievance on April 5, 2007, leading to this conclusion: "Inasmuch as the plaintiff did not comply with the requirements of the NCJ inmate grievance program or 9 N.Y.C.R.R. § 7032.4 by filing a grievance within five days of the date of the alleged assault, the plaintiff's excessive force claim against Curcione and Chawer should be dismissed." No grievance having been filed against Williams, the claim against her also was dismissed for failure to exhaust administrative remedies.

7

**ANALYSIS**

I.       Of the Claims Against Aikin and Hohensee

In analyzing the dismissal of the complaint as against Aiken and Hohensee for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), we apply a de novo standard of review, accepting as true all of the factual allegations of the complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The plaintiff has the responsibility to set forth in the complaint facts that state a claim that is plausible on its face. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court teaches that a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). We have noted our obligation to construe pro se complaints liberally, even as we examine such complaints for factual allegations sufficient to meet the plausibility requirement. See Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009). In our review of the sufficiency of a pro se complaint such as Hill's, we are constrained to conduct our examination with "special solicitude," interpreting the complaint to raise the "strongest [claims] that [it] suggest[s]." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475, 474 (2d Cir. 2006) (per curiam) (internal citations omitted; alteration omitted).

Applying the foregoing standards, we conclude, in agreement with the District Court, that Hill has failed to set forth a claim for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment prohibition of the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, extends to punishments that involve "the unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976). An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of "deliberate indifference to [a prisoner's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The standard for deliberate indifference includes a subjective component and an objective component. See Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (per

8

curiam).

Subjectively, the official charged with deliberate indifference must act with a "sufficiently culpable state of mind." See Wilson v. Seiter, 501 U.S. 294, 298 (1991). That is, the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The objective component requires that "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).

Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness — "an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (internal quotation marks omitted). In this connection, the Supreme Court has held that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106.

It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment. See id. at 106–07.

> It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.

Chance, 143 F.3d at 703. Accordingly, we have noted that the "essential test is one of medical necessity and not one simply of desirability." Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) (internal quotation marks omitted).

Hill's complaint falls far short of alleging a deliberate indifference on the part of Nurse Practitioner Aikin or Dr. Hohensee to his serious medical needs. As to each of these medical

9

providers, Hill alleges only that he was denied "medical care — that is pain medication [and] nerve conduction study — leaving him needlessly to suffer." Hill contends that the Motrin medication prescribed by Aikin was insufficient and opines that stronger pain medication was required and that a nerve conduction study was indicated by his condition. It does not appear from the complaint that Dr. Hohensee, the Jail physician, had any direct involvement in Hill's treatment. It does appear from Hill's submissions that Hill was seen by a physician's assistant soon after his injuries, that an X-ray revealed the broken bone in his wrist, and that a cast was applied.

There is no indication in the complaint that any medical provider recommended treatment different from the treatment that Hill was afforded. Although Hill alleged that Dr. Hohensee and Nurse Practitioner Aikin "expressed verbally to Plaintiff" their "belie[f] that the Department of Correctional Services should deal with Plaintiff's issues," Hill did not specify what those issues were. It may be inferred that the issues revolved around the disregard of his unsupported opinion that stronger pain medication and a nerve conduction study were warranted. In any event, there is no allegation that either medical provider acted with a culpable state of mind. In view of the foregoing, the complaint is insufficient as to defendants Hohensee and Aikin.

Therefore, and despite Hill's attempt to submit additional papers demonstrating that another doctor subsequently prescribed different pain medication and a nerve conduction study, the District Court properly dismissed the complaint without leave to amend. Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking. See Hernandez v. Keane, 341 F.3d 137, 146–48 (2d Cir. 2003). Where a proposed amendment would be futile, leave to amend need not be given. See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997).

II.     Of the Claim Against Defendant Williams

We first review the order granting summary judgment insofar as it pertains to Sergeant Williams. "The standard applicable to a motion for summary judgment, resolution of which [this

10

Court reviews] de novo, is a familiar one. Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Powell v. Nat'l Bd. of Med. Examiners, 364 F.3d 79, 84 (2d Cir. 2004); see Fed. R. Civ. P. 56(a). All reasonable inferences must be construed in the nonmoving party's favor, and if "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation marks omitted; alteration in original).

The District Court properly granted summary judgment in favor of Williams for Hill's failure to exhaust the requisite administrative review process as to Williams. The Prison Litigation Reform Act ("PLRA") provides that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2006). The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The grievance filed by Hill, the first step in the administrative process for a prisoner complaining of conditions at the Niagara County Jail, does not name Williams. There being no evidence that a grievance ever was filed against Williams by Hill, the exhaustion requirement of the PLRA has not been satisfied, and no genuine issue of material fact stands in the way of summary judgment in her favor.

III.     Of the Claims against Curcione and Chawer

The Supreme Court has held that "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). The "proper exhaustion" requirement specified by the Supreme Court imposes the obligation upon prisoners to comply with prison regulations requiring time limits. See id. at 95–96. The District Court granted summary

judgment in favor of Curcione and Chawer, citing Hill's failure to file his grievance in a timely manner. We hold that such a determination was error in this case.

The Jail has adopted a formal grievance program pursuant to New York regulations setting forth the minimum standards and regulations for the management of county jails and penitentiaries. See N.Y. Comp. R. & Regs. tit. 9, § 7032.1–12 (2011). The program allows complaints about prison conditions to be submitted to a grievance coordinator. Id. § 7032.4(e). To be timely, grievance forms must be submitted to the coordinator within five days of the occurrence giving rise to the grievance. Id. § 7032.4(d). If the inmate disagrees with the decision of the coordinator, he may appeal to the jail's chief administrative officer within two days. Id. § 7032.4(h). A further appeal may be taken through the Citizens' Policy and Complaint Review Council of the New York State Commission of Corrections. Id. § 7032.5(b).

It seems clear that Hill's grievance against Curcione and Chawer was untimely filed. The alleged assault by Curcione and Chawer occurred on March 28, 2007, and the Grievance Form was dated April 5, 2007 and received by the Grievance Coordinator on April 7, 2007. The Coordinator did not reject the grievance for untimeliness but, in a brief written decision, recognized Hill's claim of assault and found that "[t]here is no evidence to support [Hill's] allegation of any wrong doing by an officer."

While we have not yet done so, other circuits have held that a late filing that is accepted and decided on the merits fulfills the exhaustion requirement of the PLRA. In Riccardo v. Rausch, 375 F.3d 521 (7th Cir. 2004), the Seventh Circuit noted a previous holding "that, when a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second guess that action, for the grievance has served its function of alerting the state and inviting corrective action." 375 F.3d at 524 (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). Citing Pozo, the Tenth Circuit has held that "[i]f a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court." Ross v. County of Bernalillo, 365

F.3d 1181, 1186 (10th Cir. 2004).

Today, we join the Seventh and Tenth Circuits and hold that the exhaustion requirement of the PLRA is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority. Accordingly, we determine that Hill has met the exhaustion requirement in his original filing. The District Court's contrary determination was erroneous, though certainly understandable given the uncertain state of law in this Circuit at the time of its decision.

When Hill's Grievance Form was returned to him with the Decision of the Grievance Coordinator, dated April 13, 2007, written thereon, Hill checked a box entitled: "I wish to appeal to the Chief Administrative Officer" and entered the date of April 14, 2007. The Chief Administrative Officer, Captain Vandetta, returned the Form, noting that Hill had two days to appeal and advising him that "[y]our above date is not correct that you wrote." According to Captain Vandetta, the appeal "was turned in with [two grievances] dated 4/25/07." Hill requested a further appeal, to which Captain Vandetta replied in writing: "This is no longer grievable."

Hill continues to insist that the date listed for his appeal was correct and that his appeal to the Chief Administrative Officer was timely. Curcione and Chawer rely on Captain Vandetta's handwritten note that the appeal was untimely, but present no other evidence in support of that contention. Accordingly, a genuine issue of material fact may exist as to the timeliness of Hill's appeal from the April 13, 2007 decision of the Grievance Coordinator. However, because that issue was never presented to the District Court, we do not resolve it on appeal. On remand, the District Court may request additional discovery and briefing on this point in connection with a renewed dispositive motion, or proceed directly to trial.

## CONCLUSION

For the foregoing reasons, the Judgment of the District Court is affirmed in part and vacated and remanded in part for further proceedings consistent with this opinion.

13