Acosta v. Thomas

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of December, two thousand twenty.

PRESENT:
> JOHN M. WALKER, JR.,
> ROBERT A. KATZMANN,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

---

Jose Acosta,

> *Plaintiff-Appellant*,

v.                                                                                          19-2728

Justin Thomas, Superintendent, Marcy Correctional Facility, Dr. Vadlamudi, Facility Health Director, Marcy Correctional Facility, Carl J. Koenigsmann, Deputy Commissioner, Chief Medical Officer, Joseph Gullo, NYS DOCCS Audiologist,

> *Defendants-Appellees*,

John Serhan, NYS DOCCS Audiologist,

> *Defendant*.

---

FOR PLAINTIFF-APPELLANT:                          Jose Acosta, pro se,
                                                                   Woodbourne, NY.

FOR DEFENDANTS-APPELLEES:                    Owen Demuth, (Barbara D.
                                             Underwood, Victor Paladino,
                                             *on the brief*) *for* Letitia
                                             James, Attorney General of
                                             the State of New York,
                                             Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*; Dancks, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Jose Acosta, pro se and incarcerated, appeals the district court's order granting summary judgment in favor of defendant Dr. Krishna Vadlamudi, Mr. Acosta's former treating physician at Marcy Correctional Facility ("Marcy"), and defendant Dr. Carl Koenigsmann, Chief Medical Officer for the New York Department of Corrections and Community Supervision ("DOCCS"). Mr. Acosta sued the defendants under 42 U.S.C. § 1983, claiming that they exhibited deliberate indifference to his medical needs in violation of the Eighth Amendment when they discontinued his Neurontin prescription for pain, and that Dr. Vadlamudi retaliated against him in violation of the First Amendment when he refused to reinstate his prescription after Mr. Acosta filed grievances.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

---

[1] Mr. Acosta did not raise any arguments in his appeal brief regarding his deliberate indifference claims against defendant Gullo (his audiologist) and defendant Thomas (Superintendent of Marcy). Nor did he raise arguments about any of the defendants' deliberate indifference to his hearing problems. These claims are therefore waived. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995). Mr. Acosta raised his First Amendment retaliation claim against Dr. Vadlamudi only in his reply brief, and we consider it waived as well. *See JP*

2

We review a grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013) (per curiam).[2] "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011).

## I. Eighth Amendment Claim Against Dr. Vadlamudi

An incarcerated plaintiff may prevail on an Eighth Amendment claim only if he demonstrates that: (1) his medical condition is objectively a serious one (the "objective" test); and (2) the defendant acted with deliberate indifference to the plaintiff's medical needs (the "subjective" test). *Brock v. Wright*, 315 F.3d 158, 162, 164 (2d Cir. 2003); *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994). As to the objective test, "[f]actors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). For the purposes of this analysis, we assume *arguendo* that Mr. Acosta's condition is sufficiently serious.

The subjective test is satisfied by a showing that a defendant acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." *Id.* This requires

---

*Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005).

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

"something more than mere negligence; but proof of intent is not required." *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The standard is also met where the official's actions involve "the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *see Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015).

Here, the record evidence shows that Dr. Vadlamudi was concerned about the long-term use of an anti-convulsant medication like Neurontin for pain management because of its addictive properties and side effects—and particularly because, at the relevant point in time, Mr. Acosta had suffered no documented seizures for months. During his initial examination of Mr. Acosta in December 2015, Dr. Vadlamudi noted that Mr. Acosta was able to ambulate and move his extremities well, and Dr. Vadlamudi decided that he would taper Mr. Acosta off Neurontin in four days. Dr. Vadlamudi suggested that Mr. Acosta take Motrin or Tylenol for pain at sick call as needed. But after a comprehensive review of Mr. Acosta's medical history later that day, Dr. Vadlamudi decided to take a more gradual approach by maintaining the prescription for 30 days while monitoring Mr. Acosta's medical need for it and then tapering off the dosage, a position he affirmed in January 2016. While Mr. Acosta complained at sick call about being taken off Neurontin, the medical records indicate that he complained once about Motrin not being effective, after which he received Tylenol for his pain, in the course of his five appointments with Dr. Vadlamudi and his twenty-one sick call visits from January 2016 through July 2016. Mr. Acosta told the medical staff that the Tylenol helped, a statement that was uncontradicted, and he

4

requested it on fourteen occasions. Moreover, the medical records indicate that while Mr. Acosta complained about pain in his neck, back, and face, he did not describe it as excessive, unbearable, or excruciating, which would have alerted Dr. Vadlamudi or the staff that Tylenol was not effective. Mr. Acosta never told Dr. Vadlamudi that, by continuing to deny him Neurontin, Dr. Vadlamudi was causing him to "suffer and wallow in pain"—something that he did not mention until a March 2016 letter to Governor Cuomo and an April 2016 grievance, months after being taken off Neurontin. R. on Appeal Doc. No. 98-4 at 57 (Grievance); 108 at 71–75 (Letter).

In sum, the medical records show that Mr. Acosta was monitored, that Dr. Vadlamudi exercised his medical judgment to take Mr. Acosta off Neurontin, that Tylenol addressed Mr. Acosta's pain, and that his overall treatment was adequate. This evidence does not support a conclusion that Dr. Vadlamudi was aware that Mr. Acosta was "wallow[ing] in pain" or that Dr. Vadlamudi "knew that the course of treatment was largely ineffective, [yet] declined to do anything more to attempt to improve [Mr. Acosta's] situation." *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994). In other words, the evidence does not show that Dr. Vadlamudi was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference" before deciding against reinstating Mr. Acosta's Neurontin prescription. *Farmer*, 511 U.S. at 837. While Mr. Acosta points to numerous occasions when he told Dr. Vadlamudi that he experienced pain, none of these references, separately or together, show that Dr. Vadlamudi "disregarded an excessive risk to [Mr. Acosta's] safety." *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012).

While Mr. Acosta clearly disagreed with Dr. Vadlamudi's decision to discontinue his Neurontin prescription, "[i]t has long been the rule that a prisoner does not have the right to choose

5

his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("[T]he fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). And even though some of Mr. Acosta's other physicians at different institutions had determined that Neurontin was an appropriate treatment, "mere disagreement over the proper treatment does not create a constitutional claim" so long as the treatment was adequate. *Chance*, 143 F.3d at 703.

## II.    Supervisory Claims Against Dr. Koenigsmann

Generally, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). As a result, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Moreover, for a supervisor to be liable under § 1983, "there must have been an underlying constitutional deprivation." *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999). Mr. Acosta's failure to establish an underlying deprivation of his Eighth Amendment rights by Dr. Vadlamudi is therefore fatal to Mr. Acosta's § 1983 supervisor liability claim against Dr. Koenigsmann. *See id.* But even if we were to proceed to look for personal involvement, the claim against Dr. Koenigsmann would still fail. As Chief Medical Officer, Dr. Koenigsmann never examined or diagnosed Mr. Acosta. Dr. Koenigsmann did not make medical decisions as to the appropriate treatments for individual inmates or resolve disputes between inmates and their doctors. There is no evidence that he had notice of or instituted any policy, practice, or custom under which the

6

allegedly unconstitutional act occurred. True, DOCCS instituted a medication-with-abuse-potential ("MWAP") policy in 2017, which placed restrictions on Neurontin prescriptions. But to the extent Mr. Acosta argues that this MWAP policy establishes Dr. Koenigsmann's personal involvement, that argument fails because Dr. Koenigsmann did not devise the MWAP policy; DOCCS did.

As other evidence of Dr. Koenigsmann's personal involvement, Mr. Acosta also points to two replies Dr. Koenigsmann wrote to Mr. Acosta in response to letters that he had sent to Governor Cuomo. Mr. Acosta also cites Dr. Koenigsmann's email communications with physicians who treated Mr. Acosta after Dr. Vadlamudi's retirement. However, only one of Mr. Acosta's letters to Governor Cuomo complained that his Neurontin prescription was being discontinued, "leaving [him] to wallow and suffer in pain without any recourse but to use medication that causes . . . side effects." R. on Appeal Doc. No. 108 at 71–72.

Dr. Koenigsmann's response reminded Mr. Acosta that the Central Office had no authority to address his complaint, which was the subject of a pending grievance that would soon be addressed. Dr. Koenigsmann also suggested that Mr. Acosta utilize the existing sick call procedures to address his pain in the meantime. None of this indicates that Dr. Koenigsmann failed to act upon being informed that unconstitutional acts were occurring. Finally, Dr. Koenigsmann's email correspondence simply instructed Mr. Acosta's new physician on how to follow the MWAP policy when prescribing Neurontin; at no point did Dr. Koenigsmann encourage or discourage its prescription. This guidance was in line with his job responsibilities that included implementation of medical policies and practices related to medical care of inmates and thus does not indicate any personal involvement in Mr. Acosta's care.

7

We have considered all of Mr. Acosta's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court