**Dennis NELSON, Plaintiff,**

v.

**Nurse DEMING, C.O. Lawrence, K. Salotti, NP, Dr. Trobout, C. Gardner, and Officer Ryan, Defendants.**

**No. 6:13–CV–06252 EAW.**

United States District Court,
W.D. New York.

Signed Sept. 30, 2015.

252

Dennis Nelson, Attica, NY, pro se.

Hillel David Deutsch, Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## I. INTRODUCTION.

*Pro se* plaintiff Dennis Nelson ("Plaintiff"), an inmate at Five Points Correctional Facility ("Five Points"), brings this action against employees of the Department of Corrections and Community Supervision Services ("DOCCS"), pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth Amendment for Defendants' inadequate treatment of an ulcer located on his left leg. (Dkt. 1, 7, & 18). Plaintiff seeks a court order allowing him to obtain treatment at an outside hospital and a monetary award for his pain and suffering. (Dkt. 1 at 5; Dkt. 7 at 6; Dkt. 18 at 7). Plaintiff also requests an attorney to assist him with his case. (Dkt. 18 at 7)."

Presently before the Court is Defendants' motion for summary judgment in lieu of an answer (Dkt. 11) and supplemental motion to dismiss, pursuant to Fed. R.Civ.P. 12(b)(6) (Dkt. 19). Defendants argue that they are entitled to summary judgment on the claims contained in Plaintiff's original and supplemental complaints, because Plaintiff has not shown that Defendants were deliberately indifferent to his medical needs and because Plaintiff fails to allege personal involvement. (Dkt. 11–3 at 4–5). In the alternative, Defendants argue that Plaintiff's *in forma pauperis* ("IFP") status should be revoked. (*Id.* at 9). Defendants contend that Plaintiff's second supplemental complaint must be dismissed because Plaintiff did not exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), and also because Plaintiff's allegations do not state a claim for deliber-

ate indifference. (Dkt. 19 at 2–3). For the following reasons, Defendants' motion for summary judgment and motion to dismiss are granted. Defendants' motion to revoke Plaintiff's IFP status and Plaintiff's request to appoint counsel are denied as moot.

## II. BACKGROUND

■ The following allegations are contained in Plaintiff's complaint and exhibits to the complaint (Dkt. 1, 8–9), and two supplements to the complaint. (Dkt. 7 & 18).[1]

Plaintiff suffers from an ulcer on his leg, which he has allegedly had for 18 years. (Dkt. 9–1 at 2; Dkt. 18 at 5). The ulcer is roughly four inches by six inches and is located on Plaintiff's lower left leg. (Dkt. 9–1 at 8). Plaintiff has a documented history of refusing treatment for the ulcer, including dressings and medication. (*Id.* at 9, 12).

On March 8, 2012, a Five Points physician conducted a physical exam on the ulcer, which revealed a moderate amount of drainage from Plaintiff's wound but no tunneling or undermining. (*Id.* at 2). Plaintiff reported that he was experiencing a pain level of eight out of ten. (*Id.* at 2–3). Plaintiff's wound was cleaned and treated, and dressing was applied. (*Id.* at 2). Plaintiff was advised to sanitize the wound and change the dressings daily. (*Id.*).

On May 18, 2012, nurse practitioner Kristin Salotti ("Nurse Salotti") submitted a culture of Plaintiff's leg wound for testing. (*Id.* at 1). The culture tested positive for a moderate amount of methicillin-resistant Staphyloccus aureus ("MRSA").[2] (*Id.*).

---

1. The Court may consider exhibits attached to the complaint when considering a motion to

dismiss. *Stratte–McClure v. Morgan Stanley,* 776 F.3d 94, 100 (2d Cir.2015).

2. MRSA is an infection "caused by a type of

On December 24, 2012, Plaintiff was referred to "SONY Upstate" for reinsertion of two peripherally inserted central catheters (PICCS), which Plaintiff had previously removed himself. (Dkt. 8 at 2, 8, 10). On January 10, 2012, Nurse Salotti referred Plaintiff to an outside medical facility for a biopsy of his osteomyelitis (a bone infection) and MRSA in his left tibia. (*Id.* at 1).

On January 18, 2013, Plaintiff visited Cayuga Medical Center for treatment relating to his ulcer. (*Id.* at 4–9). Plaintiff was evaluated with a boil, directed to apply gentle heat to the wound, and to make a follow-up appointment. (*Id.* at 5). The medical records associated with Plaintiff's visit note that he was in a stable condition. (*Id.* at 7). In the "NYDOCS Request & Report of Consultation" submitted relating to Plaintiff's visit, his caregivers noted that it was "*very difficult*" to manage Plaintiff's medical care due to his noncompliance. (*Id.* at 10) (emphasis in original).

Between September 2012 and May 2013, DOCCS employees reported numerous acts of noncompliance by Plaintiff, including refusing antibiotics, and not allowing nurses to change his dressings or sanitize his wound. (*Id.* at 11–20). In April 2013, Plaintiff refused wound dressing changes and to take his medications on multiple occasions, even after speaking with his providers and discussing options to alleviate any discomfort. (*Id.* at 14). Although on some occasions Plaintiff communicated that he did not want to receive medications because they caused him to experience side effects (*id.*), on other occasions Plaintiff stated that he "[didn't] want [the medication]," or refused to take the medication for no reason (*id.* at 16). On May 16, 2013, Plaintiff refused to sign for and accept a

referral to the wound clinic. (*Id.* at 12). Plaintiff listed his reason for declining the referral as "I done with you!" (*Id.*).

On May 10, 2013, Plaintiff filed a complaint against Ms. Deming, nurse ("Nurse Deming"), Nurse Salotti, Ms. Lawrence, Corrections Officer, and Mr. R. Casper, pursuant to 42 U.S.C. § 1983. (Dkt. 1 at 7). In the complaint, Plaintiff alleges that Nurse Deming failed to change his wound dressings, and that Correction Officer Lawrence refused to call the nurse when Plaintiff was in pain. (*Id.* at 3). Plaintiff further alleges that his health was in danger, as the MRSA infection could cause him to lose his leg, or potentially spread through his blood stream and kill him. (*Id.* at 3, 5). Plaintiff indicates on the complaint form that his corrections facility had a grievance program and that he filed a grievance documenting his complaint (*id.* at 4, 8), but the form also indicates that Plaintiff had not yet received an answer or appealed to the highest level of the grievance process (*id.* at 4).

On August 20, 2013, Plaintiff filed a supplemental complaint alleging violations of 42 U.S.C. § 1983, and named Nurse Salotti as the sole defendant. (Dkt. 7 at 5). Plaintiff's supplemental complaint alleges that (1) he was denied due process because he did not receive adequate treatment for his leg injury, and (2) he was denied access to the courts because Nurse Salotti refused to provide him with his medical records. (Dkt. 7 at 5–6). In his supplemental complaint, Plaintiff indicates that he grieved and appealed his claims relating to the allegedly inadequate treatment of his leg and the withholding of his medical records by Nurse Salotti (*id.* at 5–6), but when asked the result of the griev-

---

staph bacteria [that has] become resistant to many of the antibiotics used to treat ordinary staph infections." *MRSA infection,* Mayo Clinic, http://www.mayoclinic.org. (last visited September 29, 2015).

ance relating to his medical records claim, Plaintiff stated, "the same result's from the other's." (Dkt. 7 at 6).

On July 21, 2013, Plaintiff filed another inmate grievance complaint. (*Id.* at 8). The grievance states that Plaintiff did not receive proper treatment for the MRSA infection in his left leg. (*Id.*). Plaintiff requested that his administrative remedies be exhausted and that he receive proper treatment. (*Id.*). Plaintiff attached this grievance to his supplemental complaint. (*Id.*).

On October 24, 2014, Plaintiff filed a second supplemental complaint, also alleging violations pursuant to 42 U.S.C. § 1983, against Nurse Salotti, Dr. Trobout, C. Gardener, Officer Ryan, Officer R. Casper, and Officer J. Page. (Dkt. 18 at 1). The allegations contained in the second supplemental complaint include denial of proper medical treatment by Nurse Salotti and Dr. Trobout, and that Nurse Gardner made an inappropriate comment about his leg. (*Id.* at 5–6). Plaintiff alleges that Dr. Trobout touched his leg without wearing gloves, and that he contracted MRSA in his leg because nurses had touched his leg without gloves. (*Id.* at 6). Plaintiff further alleges that he received a "Hypro chamber treatment," which he alleges is not meant to treat an 18 year-old wound, and that he was denied proper medical treatment. (*Id.* at 5).

Plaintiff attached to his second supplemental complaint a copy of a grievance against Officer Ryan, dated September 14, 2014, alleging that Officer Ryan said that Plaintiff's "leg will be coming off soon," and was "passing around lies" about Plaintiff losing his leg. (*Id.* at 8). Plaintiff also attached a notice from the director of the grievance program stating that Plaintiff's

grievance FPT–28821–14, entitled "Not Wearing Gloves," was received on July 7, 2014. (*Id.* at 10). Plaintiff indicated on the complaint form that he grieved his claim against Nurse Salotti, and that his appeal was received by the CORC on July 7, 2014. (*Id.* at 6). With regard to his claim against Dr. Trobout, Plaintiff indicated on the complaint form that he had not yet received an answer to his grievance, and that his appeal of the grievance was mailed "today 9–14–14." (*Id.* at 7).

## III. PROCEDURAL HISTORY

Plaintiff filed his complaint against defendants Nurse Deming, Correction Officer Lawrence, Mr. R. Casper, and Nurse Salotti, on May 10, 2013, alleging violations of 42 U.S.C. § 1983. (Dkt. 1 at 1, 7). On August 20, 2013, Plaintiff filed a related complaint alleging violations of 42 U.S.C. § 1983, naming only Nurse Salotti, which the Court deemed to be a supplement to Plaintiff's original complaint. (Dkt. 6 & 7). On November 15, 2013, Defendants moved for summary judgment in lieu of an answer, arguing that Plaintiff's complaint should be dismissed as he failed to allege personal involvement by the Defendants, and that the Defendants were not deliberately indifferent to Plaintiff's medical needs. (Dkt. 11 at 4–5). In the alternative, Defendants requested that Plaintiff's IFP status be revoked, as he previously had more than three actions dismissed pursuant to 28 U.S.C. § 1915(e), and his allegations were not credible. (*Id.* at 9). Defendants submitted with their motion sealed Exhibits A–C, which contained portions of Plaintiff's medical records. (Dkt. 15).[3] The Court issued a motion scheduling order (Dkt. 13), and Plaintiff filed an opposition to Defendants' motion for sum-

---

**3.** A portion of the medical records submitted by Defendants are identical to the records submitted by Plaintiff as exhibits to his original complaint, but also contain additional records relating to Plaintiff's refusal to accept treatment. (*See* Dkt. 15 at 9, 16–23).

mary judgment on December 13, 2013 (Dkt. 16).

On October 24, 2014, Plaintiff filed an additional § 1983 complaint, which the Court deemed to be a second supplement to the original complaint. (Dkt. 17 & 18). The second supplemental complaint named Nurse Salotti, Dr. Trobout, C. Gardner, Officer Ryan, Officer R. Casper, and Officer J. Page as Defendants. (Dkt. 18 at 1). At that time, the Court dismissed Plaintiff's claims against defendants Casper and Page, as Plaintiff failed to make any allegations against them. (Dkt. 17 at 2).

On November 13, 2014, Defendants filed a motion to dismiss addressing the allegations contained in Plaintiff's second supplemental complaint. (Dkt. 19). Plaintiff responded on December 1, 2014, and January 7, 2015. (Dkt. 21 & 23). The case was transferred to the undersigned on December 4, 2014. (Dkt. 22).

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the claims contained in Plaintiff's original complaint and supplemental complaint, on the basis that Plaintiff has not stated a claim for deliberate medical indifference and has failed to allege personal involvement by defendants Casper and Lawrence. (Dkt. 11–3 at 4–5). In the alternative, Defendants move the Court to revoke Plaintiff's IFP status because he previously had more than three actions dismissed pursuant to 28 U.S.C. § 1915(e). (Id. at 9).

### A. Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir.2002) (quoting Matsushita Elec., 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

Although a pro se litigant's pleadings should be liberally construed "to raise the strongest arguments that they suggest," Fulton v. Goord, 591 F.3d 37, 43 (2d Cir.2009) (internal quotation and citation omitted), "proceeding pro se does not otherwise relieve [a litigant] from the usual requirements of summary judgment...." see Toliver v. City of N.Y., No. 10 Civ. 3165(PAC)(JCF), 2013 U.S. Dist. LEXIS 186431, at *10 (S.D.N.Y. Dec. 13, 2013) (alteration in original) (internal quotations and citation omitted). See also Gittens v. Garlocks Sealing Techs., 19 F.Supp.2d 104, 110 (W.D.N.Y.1998) (although a court should grant "significant liberality in how pro se pleadings are construed ... proceeding pro se does not otherwise relieve a

litigant from the usual requirements of summary judgment").

 Generally, summary judgment is not appropriate until after some discovery has occurred in a case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the purpose of summary judgment is to allow for disposition of a case "after adequate time for discovery" has elapsed). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000). However, "where it is clear that the nonmoving party cannot defeat the motion by showing facts sufficient to require a trial for resolution, summary judgment may be granted notwithstanding the absence of discovery." *XL Specialty Ins. Co. v. Agoglia,* Nos. 08 Civ. 3821(GEL), 08 Civ. 4196(GEL), 08 Civ. 5252(GEL), 2009 WL 1227485, at *6 (S.D.N.Y. Apr. 30, 2009) (citing *Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 519 (2d Cir.1996)). The text of Rule 56 states that a party may move for summary judgment "at any time until 30 days after the close of all discovery," *see* Fed.R.Civ.P. 56(b), and both the Second Circuit Court of Appeals and courts from within this district have indicated that a party may be granted summary judgment before an answer is filed. *Anderson v. Rochester–Genesee Reg'l Transp. Auth.,* 337 F.3d 201, 202 (2d Cir.2003); *see also Crenshaw v. Syed,* 686 F.Supp.2d 234, 235 n. 1 (W.D.N.Y.2010); *Beckford v. N.Y.S. Office of Mental Health,* No. 06–CV–00561(SR), 2010 WL 1816689, at *1 (W.D.N.Y. May 3, 2010); *Wegman v. Grimmke,* No. 03–CV–234S,

2004 WL 2202642, at *2 (W.D.N.Y. Sept. 30, 2004).

[6] The facts contained in the attachments to Plaintiff's own complaint contradict his claim for deliberate medical indifference. Further, Plaintiff has not opposed summary judgment by arguing that he is in need of specific documents to oppose Defendants' motion. *See Young v. Benjamin Dev., Inc.,* 395 Fed. Appx. 721, 722–23 (2d Cir.2010) (district court properly granted summary judgment in favor of Defendants prior to discovery because the plaintiff failed to file an affidavit setting forth the essential elements he sought to discover, and noting that "[e]ven if [the plaintiff] had been granted the discovery he sought, it would not have changed the outcome of this matter."). Rather, Plaintiff submits a memorandum of law, affidavit, opposing statement of facts, and evidence in the form of an affidavit from a fellow inmate and medical records, in opposing Defendants' motion. (Dkt. 16 at 1–17). Further, Defendants provided Plaintiff with the required notice to a *pro se* plaintiff opposing summary judgment, in compliance with L.R. Civ. P. 56(b). (*See* Dkt. 11–1). Accordingly, it is appropriate to address Defendants' motion for summary judgment at this juncture.

**B. Lack of Personal Involvement [4]**

 "To bring a § 1983 claim against a prison official, a plaintiff must allege that individual's personal involvement; it is not enough to simply assert that the defendant is a 'link in the prison chain of command.'" *Frederick v. Sheahan,* No. 6:10–CV–6527

---

4. Plaintiff's claims against Mr. Casper were discontinued on October 24, 2014, following Plaintiff's filing of his second supplemental complaint (Dkt. 18 at 2). However, Defendants have moved for dismissal based on personal involvement in their motion for summary judgment. Accordingly, despite the fact that the docket indicates that the claims against Mr. Casper were previously dismissed, the Court will address them.

(MAT), 2014 WL 3748587, at *2 (W.D.N.Y. July 29, 2014) (quoting *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir.2004)). "A complaint based upon a violation of Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law." *Hernandez v. Sposato*, No. 12–CV–2530 (SJF)(WDW), 2014 WL 3489818, at *4 (E.D.N.Y. July 9, 2014).

Although Plaintiff brings his first complaint against defendants Deming, Salotti, Lawrence, and Casper, Plaintiff fails to make allegations against defendant Casper. Accordingly, the claims contained in Plaintiff's original complaint against defendant Casper are dismissed, because Plaintiff has failed to plead his personal involvement in the alleged § 1983 violations.

## C. Defendants Were Not Deliberately Indifferent

Defendants argue that they are entitled to summary judgment on the claims contained in Plaintiff's original and supplemental complaint because Plaintiff cannot establish a claim for deliberate medical indifference. (Dkt. 19–3 at 5).

### 1. Standard

"The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment." *Jones v. Westchester Cnty. Dep't of Corrs. Med. Dep't*, 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In order to successfully state an Eighth Amendment claim for medical indifference, a plaintiff must prove that a defendant was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This analysis contains an objective and a subjective component. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996).

The first prong of the analysis is an objective standard, and "considers whether the medical condition is sufficiently serious." *Jones v. Rock*, No. 9:12–CV–0447 (NAM/TWD), 2015 WL 791547, at *16, 2015 U.S. Dist. LEXIS 22529, at *44–45 (N.D.N.Y. Jan. 30, 2015) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir.2009)) (citation and punctuation omitted), *adopted*, 2015 WL 791547, 2015 U.S. Dist. LEXIS 21650 (N.D.N.Y. Feb. 24, 2015). Objectively, a medical need is serious for constitutional purposes if it presents " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994)).

"There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir.2003). However, the Second Circuit Court of Appeals has presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.' " *Id.* (quoting *Chance*, 143 F.3d at 702).

"We do not . . . require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one." *Id.* at 163. "At the same time, however, 'an assertion of pain sensation alone, unaccompanied by any large medical complications, does not

amount to a serious medical need under the Eighth Amendment.'" *Evans v. Manos*, 336 F.Supp.2d 255, 260 (W.D.N.Y. 2004) (quoting *Livingston v. Goord*, 225 F.Supp.2d 321, 329 (W.D.N.Y.2002)).

 The second prong of the deliberate indifference analysis is a subjective standard. "Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Lapierre v. Cnty. of Nassau*, 459 Fed. Appx. 28, 29 (2d Cir.2012) (quoting *Hathaway*, 99 F.3d at 553). Specifically, a plaintiff must prove that the prison official knew of a serious medical condition and nonetheless disregarded the plaintiff's medical needs. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970 (holding that a prison official does not act in a deliberately indifferent manner towards an inmate unless he "knows of and disregards an excessive risk to inmate health or safety. . . ."); *see also Beaman v. Unger*, 838 F.Supp.2d 108, 110 (W.D.N.Y.2011) ("To establish deliberate indifference ... [a] plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain.").

 More than medical malpractice is required to establish a constitutional violation. "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness. . . ." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir.2011). Similarly, mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106, 97 S.Ct. 285.

 Consistent with those principles, "[i]t has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill*, 657 F.3d at 123. "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

### 2. Objective Standard

Although Defendants do not make an extensive argument relating to the objective prong of the deliberate indifference analysis (*see* Dkt. 11–3 at 7), the Court is doubtful as to whether Plaintiff's injury qualifies as a "serious medical condition." Although in his complaints and responses Plaintiff indicates that he rated the pain in his leg at an eight out of ten (Dkt. 9–1 at 2–3), describes his wound as a "very bad infection" (Dkt. 1 at 5), and contends that the ulcer has caused secondary complications, such as blood clots (Dkt. 16 at ¶ 2), the medical records attached to those same complaints reveal that these medical issues were created by Plaintiff's own actions in failing to comply with directives relating to the care of his wound. *See Emerson v. N.Y.S. Dep't of Corr. Servs.*, No. 9:08–CV–824 (NAM/ATB), 2011 U.S. Dist. LEXIS 116377, at *46 (N.D.N.Y. Sept. 9, 2011) (where the plaintiff-inmate was suffering from ulcers, stating that "[t]here is no plausible evidence supporting plaintiff's suggestion that the relatively brief limitation on his choice of whirlpool machines, as opposed to his own persistent resistance to medical advice and treatment, caused or exacerbated any serious medical condition," and therefore he could not satisfy the objective prong of the deliberate indifference analysis), *adopted*, 2011 U.S. Dist. LEXIS 112521 (N.D.N.Y. Sept. 30, 2011). In his affidavit in opposition to Defendants' motion for summary judgment,

Plaintiff concedes that he "complicate[d] [his] own health issues by putting feces in the wound." (Dkt. 16 at ¶ 12). Nurse Deming similarly testified in her declaration that "[h]ad Plaintiff complied with his treatment regimen, it is very likely his ulcers would have healed long ago," and "[e]xcepting his own conduct, Plaintiff is not in any imminent danger of serious physical injury." (Dkt. 11–4 at ¶¶ 10, 13).

Further, the medical records provided by Plaintiff and Defendants do not indicate that Plaintiff presently suffered from a condition of urgency or experienced extreme pain. *See also* Dkt. 11–4 at ¶ 7 ("Plaintiff is not in any imminent danger of serious physical injury as a result of his leg ulcers."); Dkt. 11–5 at ¶¶ 11–12 ("Plaintiff's ulcers are not gangrenous, have no odor and no undermining or tunneling . . . . Plaintiff is not in any imminent danger of serious physical injury as a result of his leg ulcers.").

### 3. Subjective Standard

 Even if Plaintiff could satisfy the objective prong of a deliberate indifference standard, Plaintiff has failed to show that Defendants culpably and deliberately disregarded Plaintiff's medical needs. Plaintiff's allegations indicate that he received adequate medical treatment from Five Points employees, evidenced by the various treatment records attached to his own complaints (Dkt. 8 at 1–24; Dkt. 9–1 at 1–18), despite his own acts of noncompliance. As Plaintiff's records show, he was treated almost daily, and offered antibiotics and a change of wound dressings. (Dkt. 8 at 11–22). When nurse practitioners believed that Plaintiff's wound required extra care, he was transferred to the infirmary and treated by a doctor. (*Id.* at 2, 21–22). Neither the treating Five Points staff, nor the doctor in the infirmary, indicated that Plaintiff needed treatment beyond what he was provided.

While Plaintiff contends that he requires treatment at an outside hospital where he can receive "around the clock professional care," (*see* Dkt. 16 at ¶ 7), "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703; *see also Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). In any event, exhibits submitted by Plaintiff in support of his complaint reveal that he was in fact referred for treatment at outside medical facilities. (Dkt. 8 at 1–2, 4–9).

The medical records and affidavits submitted by Defendants demonstrate that Plaintiff was provided with dressing changes and received adequate medical care. Accordingly, Plaintiff's conclusory assertions to the contrary are insufficient to create a material issue of fact. *See Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 451 (2d Cir.1999) (affidavits based on conclusory allegations insufficient at summary judgment); *Warren v. Corcoran,* No. 9:09–CV–1146 (DHN/ATB), 2011 WL 5599587, at *6 n. 12 (N.D.N.Y. Oct. 20, 2011) ("Plaintiff's conclusory claims to the contrary, which are flatly contradicted by medical records documenting the care he received, are insufficient to create a material issue of fact with respect to his claims of deliberate indifference."); *Brown v. White,* No. 9:08–CV–200 (GLS/ATB), 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention on a particular

date "is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record."). In other words, there is no evidence in the record indicating that Defendants engaged in any actions even bordering on criminal recklessness; to the contrary, the evidence shows that Defendants appropriately responded to and treated Plaintiff's injury.

The undisputed evidence shows that Plaintiff's refusal to receive treatment and noncompliance with the directions he received from Defendants, caused him to experience pain, rather than any deliberate indifference by Defendants. (*See* Dkt. 15 at 17 (on November 1, 2013, Plaintiff refused antibiotic and dressing change, told nurse to "go away."); *id.* at 18 (on August 19, 2013, Plaintiff "[r]efused care when asked if he was taking antibiotics; states [he] does not want another appointment."); *id.* at 19 (on July 26, 2013, Plaintiff refused treatment, stated "I don't care."); *id.* at 20 (on July 15, 2013, Plaintiff refused seizure medications and antibiotics); *id.* at 21 (on March 27, 2013, Plaintiff refused antibiotics, stating "I'm not ready, cause I don't want them."); *id.* at 22 (on May 16, 2013, Plaintiff refused to sign a referral for the wound clinic and infectious disease, stating "I done with you!"); *id.* at 23 (on April 2, 2013, Plaintiff refused antibiotic and dressing change)). On each of the occasions he refused treatment, Plaintiff was advised that failure to comply with a treatment

regimen could result in loss of his limb or death.

An inmate's refusal to receive treatment indicates that the inmate's treating doctors and nurses were not deliberately indifferent to the inmate's medical needs. *See Jones v. Smith,* 784 F.2d 149, 152 (2d Cir.1986) (district court properly dismissed the plaintiff's deliberate indifference claim because given the inmate's "constant declinations to be treated by prison doctors, failure to treat his back was at best a question of malpractice...."); *Ross v. Kelly,* 784 F.Supp. 35, 47 (W.D.N.Y.1992) (where the plaintiff often disagreed with his physicians and refused treatment on a number of occasions, he failed to state a claim for deliberate indifference), *aff'd,* 970 F.2d 896 (2d Cir. 1992).

Plaintiff attempts to create an issue of fact by submitting an affidavit from a fellow inmate, Lance Carter, who contends that he has personally observed Plaintiff's wound, and that he has seen Defendants provide Plaintiff with inadequate medical care. Mr. Carter also contends that Defendants have provided Plaintiff with a medication to which he has had an allergic reaction and have not identified an alternative medication. (Dkt. 16 at ¶ 12). In his affidavit, Plaintiff characterizes his allergic reactions to include "bleeding gums, vomiting blood, migraine headaches, stolen appetite, seizures and general major discomfort...." (Dkt. 16 at ¶ 6).[5]

---

5. Notably, it is questionable whether the side effects allegedly caused by Plaintiff's medication would even qualify as a serious medical need. *See Sledge v. Bernstein,* No. 11 Civ. 7450(PKC)(HBP), 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) (" [C]ourts in this district have held that terrible and extreme headaches and swelling do not satisfy the objective component of' the deliberate indifference inquiry."); *Green v. LaClair,* No. 9:07–CV–0351 (GTS/DEP), 2012 WL 1144569,

at *16 (N.D.N.Y. Feb. 24, 2012) ("Plaintiff complains that he suffered a loss of appetite and constipation, effects which clearly are not the type of medical problems that would normally significantly interfere with plaintiff's daily activities or cause severe pain."), *adopted,* 2012 WL 1048764 (N.D.N.Y. July 13, 2012); *Ross v. McGinnis,* No. 00–CV–0275E(SR), 2004 WL 1125177, at *10 (W.D.N.Y. Mar. 29, 2004) ("Plaintiff's complaints of abdominal pain, vomiting, heart-

Plaintiff neither pleads nor offers evidence that Defendants culpably and deliberately dispensed him medication so that he would experience allergic reactions. The medication was prescribed by a specialist who had assessed Plaintiff's condition (Dkt. 11–5 at ¶ 8), and Plaintiff's disagreement with this course of treatment does not amount to deliberate indifference by Defendants. *Chance,* 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); *see also Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, [ ]or a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."); *Ahlers v. Kaskiw,* No. 9:12–CV–501(GLS/ATB), 2014 WL 4184752, at *10, 2014 U.S. Dist. LEXIS 117429, at *26 (N.D.N.Y. July 9, 2014) ("plaintiff's disagreement with his medical care providers about the appropriate medication for his skin condition [is not] sufficient to create a factual issue as to whether they harbored subjective deliberate indifference to his serious medical needs."), *adopted,* 2014 WL 4184752, 2014 U.S. Dist. LEXIS 116420 (N.D.N.Y. Aug. 21, 2014); *Houston v. Wright,* No. 9:10–CV–1009 (NAM/RET), 2013 WL 5439826, at *8, 2013 U.S. Dist. LEXIS 142040, at *21 (N.D.N.Y. Aug. 29, 2013) ("it appears that Plaintiff has mistakenly characterized Dr. Johnson's alleged medical decision to pursue a diagnosis and treatment for myasthenia gravis rather than treat Plaintiff for an allergic or adverse reaction to blood pressure medication, as deliberate indifference. However, regardless of whether Dr. Johnson's course of treatment was correct or not, the dispute over the

burn, constipation, body odor and extreme body heat did not constitute a serious medical

propriety of the course of treatment, diagnosis, or medication she chose to pursue is not actionable."), *adopted,* 2013 WL 5439826, 2013 U.S. Dist. LEXIS 139061 (N.D.N.Y. Sept. 27, 2013). Further, Mr, Carter testified that Plaintiff's medication regimen was changed in November 2013 when Defendants "acknowledged" that Plaintiff had an allergic reaction to his previous medication. (Dkt. 16 at ¶ 13).

Because Plaintiff has failed to raise a material issue of fact as to whether Defendants deliberately disregarded a serious medical need, Plaintiff's claims contained in the original and supplemental complaint are dismissed.

### D. Nurse Salotti's Failure to Provide Plaintiff With Medical Records

■ Plaintiff also alleges that Nurse Salotti did not provide him with his medical records. To the extent Plaintiff alleges that Nurse Salotti violated his Eighth Amendment rights, her failure to provide him with medical records plainly does not rise to the level of deliberate indifference. *See Wood v. Housewright,* 900 F.2d 1332, 1334–35 (9th Cir.1990) (finding that the failure of prison officials to provide a prisoner's medical records to transferee prison did not rise to level of deliberate indifference because it did not cause "substantial harm."); *see also Ross,* 784 F.Supp. at 47 (same).

To the extent Plaintiff claims that he was denied access to the courts or denied due process by Nurse Salotti's conduct, this claim also must be dismissed. *See Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at *7 (S.D.N.Y. Nov. 17, 1997) (claim for deprivation of legal documents and medical records "does not lie in

need.").

federal court," and does not qualify as a constitutional violation, unless the plaintiff establishes an actual injury). Plaintiff's claim that Nurse Salotti refused to provide him with his medical records is conclusory and not substantiated by evidence in the record. Further, there is no allegation that Nurse Salotti's alleged refusal to provide Plaintiff with medical records caused him harm or in some way exacerbated his condition.

## V. DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss Plaintiff's second supplemental complaint on the ground that Plaintiff failed to exhaust his administrative remedies and because the claims asserted therein do not state a deliberate indifference claim. (Dkt. 19–1 at 2–3). In response, Plaintiff demands a trial so that he can "show [the Court] what is happening to [his] infected leg." (Dkt. 23 at 2).

### A. Standard

" 'In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir.2004) (alteration in original) (internal citation omitted) ("It is well-established that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' "). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a

valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir.1984).

When a motion is premised on the plaintiff's failure to exhaust all administrative remedies, the court considers whether exhaustion is clear from the face of the complaint and incorporated documents. *See McCoy v. Goord*, 255 F.Supp.2d 233, 251 (S.D.N.Y.2003). That is because "failure to exhaust is an affirmative defense in a lawsuit governed by the PLRA." *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir.2009) (citing *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). If non-exhaustion is clear, the motion to dismiss should be granted. *Shaw v. City of N.Y.*, No. 08 Civ. 3997(SHS)(JCF), 2009 WL 1110789, at *3 (S.D.N.Y. Apr. 21, 2009) (quoting *McCoy*, 255 F.Supp.2d at 251).

## B. Failure to Exhaust Administrative Remedies

Defendants argue that the claims contained in Plaintiff's second supplemental complaint must be dismissed because he failed to exhaust his administrative remedies. (Dkt. 19–1 at 2).[6]

The PLRA provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C.1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). "For lawsuits related to conditions of prison life, the Supreme Court held in [*Porter v. Nussle*] that the PLRA requires an inmate to exhaust all

prison grievance procedures before seeking judicial relief, regardless of whether a plaintiff's claims 'involve general circumstances or particular episodes, and whether [he] alleges[s] excessive force or some other wrong.' " *Rodriguez v. Hahn*, 209 F.Supp.2d 344, 346–47 (S.D.N.Y.2002) (quoting *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "Allegations concerning food and medical care are considered 'prison conditions' under the PLRA and require exhaustion of available administrative remedies before a lawsuit can be filed in court." *Gray v. Metro. Det. Ctr.*, No. 09–CV–4520(KAM)(LB), 2011 WL 2847430, at *8 (E.D.N.Y. July 15, 2011).

The PLRA contains a variety of provisions designed to manage prisoner-brought litigation in federal courts. *See, e.g.,* 42 U.S.C. § 1997e(c) (requiring district courts to weed out prisoner claims that clearly lack merit). A centerpiece of the PLRA's effort to reduce the quantity of prisoner suits is a strengthened exhaustion provision. *See* 42 U.S.C. § 1997e(a). Exhaustion is no longer left to the discretion of the district court, and is now mandatory. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Exhaustion of administrative remedies has been defined as " 'using all steps that the agency holds out, and doing *so properly* (so that the agency addresses the issues on the merits).' " *Woodford v. Ngo*, 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

In New York, an inmate's exhaustion of his administrative remedies

---

**6.** The Court notes that the claims contained in Plaintiff's original complaint (Dkt. 1) also appear to have not been exhausted, *see* Dkt. 1 at 4 (Plaintiff conceding that he "didn't get [an] answer yet" to his first grievance). However,

because Defendants have failed to raise failure to exhaust as a basis for dismissing the claims contained in the original complaint, the Court declines to dismiss those claims on that basis.

pursuant to the PLRA consists of a three-step review process:

> ·First a grievance complaint is submitted to the Inmate Grievance Resolution Committee ("IGRC") for an initial determination. The grievance must be submitted within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a). Next, if the IGRC decision is adverse to the inmate, he has seven calendar days to appeal to the prison superintendent. *Id.* at § 701.5(c). If dissatisfied with the superintendent's decision, an inmate has another seven calendar days to appeal the superintendent's decision to the Central Office Review Committee ("CORC"). *Id.* at § 701.5(d).

*Chiarappa v. Meyers,* No. 09–CV–607(JTC), 2013 WL 6328478, at *5 (W.D.N.Y. Dec. 5, 2013). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to 42 U.S.C. § 1983, in federal court. "PLRA exhaustion is a condition that must be satisfied *before* the courts can act on an inmate-plaintiff's action." *Messa v. Goord,* 652 F.3d 305, 309 (2d Cir.2011) (emphasis in original). Defendants carry the burden of establishing a failure to comply with exhaustion. *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004).

▉▉▉ The Second Circuit Court of Appeals has recognized some exceptions to the exhaustion requirement, because "in some circumstances, the behavior of the defendants may render administrative remedies unavailable." *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). There are three exceptions to the exhaus-

tion requirement, including (1) when prison officials have failed to make administrative remedies "available" to the prisoner; (2) when the defendants have forfeited the defense by failing to raise or preserve it, and whether the defendants' actions inhibiting the inmate's exhaustion of remedies would estop the defendants from raising it; and (3) whether special circumstances justify the inmate's failure to comply with administrative procedural requirements. *Abney v. McGinnis,* 380 F.3d 663, 666–67 (2d Cir.2004).[7]

▉▉▉ Plaintiff does not argue that the *Hemphill* exceptions apply in this case, and the allegations in Plaintiff's complaint do not indicate that any of the exceptions would be applicable. When a plaintiff proceeds *pro se,* the court is "obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Nonetheless, it is apparent from Plaintiff's complaint, even when construed generously, that none of the exceptions would apply.

▉▉▉ Plaintiff was plainly aware that administrative remedies existed but failed to exhaust them, as required by the PLRA. Plaintiff's second supplemental complaint against defendants Salotti, Trobout, Gardner, and Ryan, alleges denial of proper medical treatment against defendants Salotti and Trobout. (Dkt. 18 at 5–6). The second supplemental complaint also alleges that Nurse Gardner said, "kool," when Plaintiff showed her his leg. (*Id.* at 6). Plaintiff indicates that his claim against Nurse Salotti was grieved and ap-

---

**7.** There is an open question regarding the continuing vitality of portions of the Hemphill framework following the United States Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) that the PLRA requires "proper exhaustion." *See Amador v. Andrews,* 655 F.3d 89, 102 (2d Cir.2011) ("Subsequent decisions have questioned the continued viability of this framework following the Supreme Court's decision in [*Woodford* ]."). The Second Circuit Court of Appeals has repeatedly declined to reach this issue. *See id.* (collecting cases and declining to reach the issue).

pealed (*id.* at 5–6) but he does not indicate the result of the grievance or appeal. Rather, Plaintiff indicates that his appeal was received by the CORC on July 7, 2014. (*Id.* at 6, 10). Plaintiff also alleges that his claims against Dr. Trobout and Nurse Gardner were grieved, but he also indicates that he had not received an answer to the grievance at the time he filed the second supplemental complaint and had not yet filed an appeal. (*Id.* at 7). In support of his claims, Plaintiff attaches a grievance dated September 15, 2014, against defendants Ryan and Gardner,[8] but the grievance does not include any allegations against defendants Salotti or Trobout. (*Id.* at 8).

■ It is well-settled that "inmates must actually receive a response from the CORC in order to exhaust administrative remedies." *See Wilson v. Gantert,* No. 01–CV–6371 (CJS), 2004 WL 1591400, at *4 (W.D.N.Y. July 12, 2004) (citing *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 348 (S.D.N.Y.2002)); *see also Parkinson v. Goord,* 116 F.Supp.2d 390, 394 (W.D.N.Y. 2000). In both *Wilson* and *Rodriguez,* the court found that a plaintiff's conclusory allegation that he filed a grievance was insufficient. 209 F.Supp.2d at 347–48, 2004 WL 1591400, at *4. While Plaintiff states in his second supplemental complaint that he grieved his claims, other information contained in or omitted from the face of the complaint indicates that he did not successfully grieve and appeal the claims contained in the second supplemental complaint.

Accordingly, the claims contained in the second supplemental complaint are dismissed. *See Khudan v. Lee,* No. 12–cv–8147, 2015 WL 5544316, at *4 (S.D.N.Y.

Sept. 17, 2015) (explaining that inmate-plaintiff's are not required to specifically plead exhaustion because it is an affirmative defense, but stating that "a court may nonetheless dismiss a prison condition suit on a Rule 12(b)(6) motion if the allegations of the complaint show that the plaintiff has failed to comply with the administrative exhaustion requirement.... In other words, although a complaint cannot be dismissed for failing to plead that administrative remedies were exhausted, it *can* be dismissed if it pleads facts demonstrating that administrative remedies were *not* exhausted.") (citation omitted) (emphasis in original); *Williams v. Dep't of Corr.,* No. 11 Civ. 1515(SAS), 2011 WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011) ("Dismissal for failure to exhaust administrative remedies is appropriate where, on the face of the Complaint, it is clear that plaintiff did not exhaust such remedies.").

### C. The Merits of Plaintiff's Claims in the Second Supplemental Complaint

Defendants have also moved to dismiss Plaintiff's second supplemental complaint because his allegations do not state a claim for deliberate medical indifference. (Dkt. 19–1 at 3). The claims in the second supplemental complaint are essentially the same as those included in his original and supplemental complaints, which the Court previously found do not satisfy the deliberate indifference threshold and are contradicted by the medical record. *See* Part IV B & C of this Decision and Order, *supra.* In his second supplemental complaint, Plaintiff alleges that he disagreed with the course of treatment prescribed by Nurse Salotti; Dr. Trobout touched Plaintiff's leg

---

**8.** The September 15, 2014 grievance includes allegations against Officer Ryan for stating that Plaintiff's leg "will be coming off soon," and for "passing around lie's about [Plaintiff]

loosing [his] leg." (Dkt. 18 at 8). These allegations do not appear in the second supplemental complaint.

without wearing gloves; and when Plaintiff showed Nurse Gardner his leg "with a bone sticking out," she gave an inappropriate response by saying "kool." As noted above, none of these allegations state a claim for deliberate medical indifference. *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); *Goolsby v. Cicconi-Crozier*, No. 13–CV–822–A, 2014 WL 1279066, at *4 (W.D.N.Y. Mar. 27, 2014) ("Even upon the most liberal construction of the complaint, plaintiff's allegations fail to satisfy the objective component of a deliberate indifference claim because he does not allege that any actual harm resulted....); *Little v. Municipal Corp.*, 51 F.Supp.3d 473, 500 (S.D.N.Y.2014) ("[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.") (quotation omitted).

■ Based on both his failure to exhaust and to state a claim for deliberate indifference, the claims contained in Plaintiff's second supplemental complaint are dismissed.[9]

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment and motion to dismiss arc granted. Defendants' motion to revoke Plaintiff's IFP status and Plaintiff's request to appoint counsel are denied as moot. The Clerk of Court is directed to close the case.

SO ORDERED.

---

9. Generally, a dismissal for failure to exhaust administrative remedies is without prejudice. *See Snider v. Melindez*, 199 F.3d 108, 111–12 (2d Cir.1999) ("Failure to exhaust administrative remedies is often a temporary, curable, procedural flaw. If the time permitted for pursuing administrative remedies has not expired, a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit...."). However, because the Court's dismissal is also based on Plaintiff's failure to state a claim, the second supplemental complaint is dismissed with prejudice.