**Jessie ENGLES, Plaintiff,**

**v.**

**Sgt. Jerry JONES, Richard Hardy, C.O. Jeffrey Cavalussi, C.O. Elmer Parish, Sgt. Eric Morton, C.O. Travis Hill, C.O. Eric Farly, C.O. P. Harrision, Nurse Audrey C. Sykes, Assistant Comm. Mike Rasmus, Defendants.**

**No. 6:13–CV–6461 EAW.**

United States District Court, W.D. New York.

Signed Nov. 16, 2015.

Jessie Engles, Attica, NY, pro se.

Bernard F. Sheehan, NYS Attorney General's Office, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

Plaintiff Jessie Engles ("Plaintiff"), proceeding *pro se*, is an inmate currently housed at Attica Correctional Facility. Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983, alleging that Defendants committed various violations of Plaintiff's constitutional rights while he was housed at Five Points Correctional Facility. (Dkt. 12). Specifically, Plaintiff claims he was assaulted after a suicide attempt, was denied medical care when he was transferred to a psychiatric center, was denied access to the courts, was denied his right to practice religion, and was denied his right to due process at a disciplinary hearing.

Presently before the Court are the following motions: (1) Defendant Hardy's motion to dismiss (Dkt. 33); (2) Defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) and/or for summary judgment in lieu of an answer pursuant to Fed.R.Civ.P. 56 (Dkt. 25); (3) Plaintiff's motion to compel discovery (Dkt. 34); and (4) Plaintiff's motion to appoint counsel (Dkt. 45).

For the following reasons, Defendants' motion to dismiss and/or for summary judgment (Dkt. 25) is granted in part and denied in part; Defendant Hardy's motion to dismiss (Dkt. 33) is granted; Plaintiff's motion to compel discovery (Dkt. 34) is denied as moot; and Plaintiff's motion to appoint counsel (Dkt. 45) is granted.

### PROCEDURAL BACKGROUND

Plaintiff filed his original complaint in this matter on August 16, 2013, in the Northern District of New York. (Dkt. 1). On August 29, 2013, the matter was transferred to the Western District of New York. (Dkt. 6). On October 7, 2013, the Court granted Plaintiff leave to proceed *in forma pauperis* and further granted Plaintiff leave to file an amended complaint. (Dkt. 8). Plaintiff filed his amended complaint on June 17, 2014. (Dkt. 12).

On January 5, 2015, the Honorable Charles J. Siragusa, United States District Judge, transferred this case to the undersigned. (Dkt. 21). Defendants filed a motion for summary judgment on January 26, 2015. (Dkt. 25). On February 23, 2015, Defendant Richard Hardy moved to join the Defendants' pending motion and requested dismissal of the case against him based on official capacity grounds. (Dkt. 33).

Plaintiff filed a motion to compel discovery on February 23, 2015. (Dkt. 34). Defendants filed a memorandum in opposition to the motion to compel discovery on March 9, 2015. (Dkt. 37). Plaintiff filed reply papers on March 18, 2015. (Dkt. 38).

On June 2, 2015, Plaintiff filed his opposition to the motion for summary judgment. (Dkt. 43). Defendants filed reply papers on June 29, 2015. (Dkt. 44).

On June 29, 2015, Plaintiff filed a motion to appoint counsel. (Dkt. 45).

### FACTUAL BACKGROUND

Plaintiff's amended complaint asserts the following facts. (Dkt. 12).

Plaintiff alleges that he "was subjected to harassment and other misconduct" by New York State Department of Corrections and Community Supervision ("DOCCS") employees from approximately June 2010 through August 28, 2010. (Dkt. 12 at ¶ 1). On August 16, 2010, Plaintiff claims that he began to "experience suicidal ideation" as a result of the harassment. (*Id.* at ¶ 2). Plaintiff alleges that he informed Defendants Harrison, Mordon, and Labac of his suicidal ideations on August 16, 2010, but nevertheless Defendant Harrison issued Plaintiff a razor on that date that Plaintiff "utilized in a serious attempt to end his life." (*Id.* at ¶¶ 3–4).

According to Plaintiff, he was fully shackled and placed on a stretcher for transport to the nursing clinic. (*Id.* at ¶ 8). While Defendants Morton, Hill, Farley, Hardy, and Parish pushed the stretcher, they also allegedly used excessive force by "assaulting [Plaintiff] by hitting [him] in [his] head, ribs, private parts, back, etc." (*Id.*). Defendant Hill allegedly pulled Plaintiff's fingers apart until his "hand snapped & broke." (*Id.*). According to Plaintiff, Defendants Morton and Jones, both sergeants at the time of the incident, observed the assault but failed to intervene. (*Id.* at ¶ 12). Plaintiff also alleges that Defendant Jones threatened Plaintiff with "serious physical injury & death" if Plaintiff filed any grievances or lawsuits. (*Id.* at ¶ 13). Plaintiff claims that as a result of this incident, he sustained a metacarpal fracture, contusions to his head, hands, wrist, back, and chest, as well as testicular pain and swelling. (*Id.* at ¶ 10). Plaintiff also claims psychological and emotional harm by way of flashbacks, nightmares, and panic attacks. (*Id.*).

On February 3, 2011, Plaintiff alleges he was verbally threatened by Defendant Jones, who stated, in sum:

Don't think I'm not aware that you filed a grievance regarding the 8–16–10 incident. You think you was slick by not mentioning any names, but if you try to file a lawsuite[sic] against us, your stay here won't be nice. You will find yourself really hurt the next time around & you won't be transferred out [of] the facility, nor will you get out of the "SHU" for a long time if you try to fuck me over. But if you don't fuck with me, or don't give any of my officers any problems, you don't have anything to worry about.

(*Id.* at ¶ 14). Plaintiff claims this altercation occurred in 12 Block A2 company and was overheard by the inmate in his neighboring cell, Sean Benton. (*Id.* at ¶ 14). Plaintiff alleges he filed a grievance concerning the verbal threats on February 3, 2011, and February 10, 2011, before being transferred out of the facility, but was informed on May 3, 2011, that his grievance was never processed. (*Id.* at ¶ 15). Plaintiff claims he filed a new grievance. (*Id.*).

Plaintiff claims he was placed in an "observation stripped cell" at Five Points Correctional Facility from August 17, 2010, through August 28, 2010. (*Id.* at ¶ 17). Plaintiff alleges he received his religious meals for the first three days of this observation, but was then denied his religious meals for over seven days until he was transferred and admitted to Central New York Psychiatric Center ("CNYPC") on August 28, 2010. (*Id.* at ¶ 18).

According to Plaintiff, when he was admitted to CNYPC, the nurses who examined him upon admission stated that he could not have a splint, and removed the splint from Plaintiff's hand. (*Id.* at ¶¶ 19–20).[1] Plaintiff alleges that he was denied a

---

1. On October 24, 2014, Defendant "Jane Doe    Nurse" was replaced with Nurse Audrey C.

splint or cast for his hand from August 28, 2010, through December 10, 2010, causing him pain. (*Id.* at ¶ 20). Plaintiff filed a grievance with the IGRC office at Five Point Correctional Facility while he was housed at CNYPC. (*Id.* at ¶ 21).

Plaintiff alleges he was denied a fair and impartial hearing officer at the disciplinary hearing conducted with respect to the August 16, 2010 incident. (*Id.* at ¶ 22). Plaintiff claims he was denied the right to call certain witnesses and was "found guilty with no substantial proof" in light of the fact that he identified contradictions in the memoranda of the prison officials. (*Id.*).

## DISCUSSION

### I. Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (em-

phasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

As an initial matter, the Court notes that "Defendants' application is odd in several respects." *Parra v. Wright,* No. 11–CV–6270 CJS, 2013 WL 6669235, at *4 (W.D.N.Y. Dec. 18, 2013). Defendants' notice of motion indicates that they are moving for an order "[p]ursuant to Rule 12 and Rule 56 of the Federal Rules of Civil Procedure." (Dkt. 25 at 1). Defendants motion includes a Rule 56 statement of facts and an affidavit from Defendant Sykes. (Dkt. 25–2, 25–4). Defendants' motion also includes the required L.R. Civ. P. 56(b) notice to *pro se* litigants (Dkt. 15–1), but the supporting memorandum of law includes the Rule 12(b)(6) "motion to dismiss for failure to state a claim" standard (Dkt. 25–3 at 5). Additionally, when using the Court's electronic docketing system, defense counsel designated his motion as a motion for summary judgment only. (Dkt. 25). "The Court urges that in the future, Defendants' counsel determine the basis for his motion, and draft the supporting papers to accurately and consistently reflect the same." *Parra,* 2013 WL 6669235, at *4.

■ Defendants have submitted materials outside of the scope of Plaintiff's complaint in support of their motion. (Dkt. 25–4). While such materials may not be considered on a motion to dismiss, they may be considered on a motion for summary judgment. *See* Fed.R.Civ.P. 12(d) and Fed.R.Civ.P. 56.

Sykes per the Court's October 21, 2014 *Valentin* order. (Dkt. 18, 19).

In a separately filed motion to compel discovery, Plaintiff noted that he had not had the opportunity to conduct discovery to adequately respond to the motion to dismiss/motion for summary judgment. (Dkt. 34). In further support of his motion, Plaintiff indicated that he had filed three discovery requests pursuant to the federal rules, but that Defendants refused to produce information on the basis that there was a pending motion before the Court. (Dkt. 38 at 2–4). Plaintiff stated that he needed the evidence requested in order to "prove his case accordingly" in light of the fact that Defendants filed a motion for summary judgment. (*Id.* at 3–4). He also expressed his desire to serve interrogatories and notices to admit on Defendants. (*Id.* at 4). Plaintiff argued that he would be able to establish the subjective and objective prongs of his claims if he was permitted to conduct discovery on his claims. (*Id.* at 4–5). Plaintiff asserted that he was "never provided adequate time to do discovery before the Defendants filed their Motion to Dismiss/Summary Judgement[sic], and if [the Court] let[s] them have their way, they are asserting that [he] should only be allowed to rely on just [his] amended complaints & the portion of documents provided under the [Valentin] order, which Plaintiff feels may not be enough to overcome such a motion...." (*Id.* at 5).

Defendants opposed Plaintiff's motion to compel by parsing out the arguments in their dispositive motions and contending that they only moved for summary judgment with respect to the deliberate indifference claim against Defendant Sykes, and that Plaintiff failed to demonstrate he needed discovery to preclude summary judgment in favor of Defendant Sykes. (Dkt. 37 at 3). In no way is it apparent from the face of Defendants motion papers that they have moved for summary judgment on the claims against Defendant Sykes, but their motion to dismiss is

against Plaintiff's remaining claims. In fact, the notice of motion indicates that "[s]pecifically, Defendants move to dismiss Plaintiff's official capacity claims, claims against Defendant Sykes, claims against Defendant Rasmus, 'access to courts' claims, 'freedom to practice religion' claims, and due process claims...." (Dkt. 25 at 1). It would seem from the language of the notice of motion that Defendants are lumping all of their arguments together. If the Court cannot ascertain what standard should be applied to which claims, there can be no expectation for a *pro se* plaintiff to make such a distinction.

▬▬ "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000). Pursuant to Fed.R.Civ.P. 56(d), to avoid summary judgment on the basis that facts are unavailable to the nonmovant, the non-movant must submit a declaration stating that, for specified reasons, it cannot present facts essential to justify its opposition. Plaintiff has submitted such a declaration. (*See* Dkt. 38).

▬▬ Granting summary judgment against Plaintiff is inappropriate at this stage of the litigation because he has not had any opportunity to conduct discovery to substantiate his claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the purpose of summary judgment is to allow for disposition of a case "after adequate time for discovery" has elapsed); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir.2003) (stating that summary judgment should only be granted after discovery); *Baptiste v. Warden at Ottisville, FCI New York*, No. 09 Civ. 5523(AKH), 2010 WL 3185748, at *3 (S.D.N.Y. Aug. 11, 2010) (declining to con-

vert motion to one for summary judgment in light of plaintiff's *pro se* status and lack of any discovery).

Defendants argue they have submitted as exhibits to their motion materials that are relevant to Plaintiff's claims against Defendant Sykes. (*See* Dkt. 37 at 3). However, these materials were selected by Defendants, and Plaintiff also argues that affording him the opportunity to submit interrogatories and notices to admit will help him substantiate his claims. (*See* Dkt. 38). Plaintiff has not had *any* opportunity to engage in discovery. *See Kelly v. Tan,* No. 11–CV–06614–CJS, 2013 WL 4811913, at *4 (W.D.N.Y. Sept. 10, 2013) ("the Court is mindful that no discovery has yet taken place in this action ... the Court could deny the motion on this basis alone....").

Defendants' motion for summary judgment is denied without prejudice. Defendants may renew their motion for summary judgment after Plaintiff has had an opportunity to engage in discovery. The Court evaluates Plaintiff's complaint under the standard for a motion to dismiss, and declines to consider any materials outside the four corners of Plaintiff's complaint.

## II. Motion to Dismiss

### A. Standard of Review

" 'In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d

Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001) (internal quotations and citation omitted); *see also Hemphill v. New York,* 380 F.3d 680, 687 (2d Cir.2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.' ") (alteration

in original) (internal citation omitted). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984).

## B. Official Capacity Claims

■ Defendants request that the Court dismiss Plaintiff's claims against Defendants in their official capacities, arguing that Plaintiff has failed to state any basis for injunctive relief and that the Eleventh Amendment bars any action for monetary damages against state employees in their official capacities. (Dkt. 25–3 at 7–9). "Money damages cannot be recovered from state officers sued in their official capacities.... However, prospective injunctive relief is available against individuals being sued in their official capacities." *Kanciper v. Lato,* 989 F.Supp.2d 216, 233 (E.D.N.Y.2013). Here, Plaintiff seeks injunctive and monetary relief against Defendants in both their individual and official capacities. (Dkt. 12 at ¶¶ 26–27).

### 1. Request for Injunctive Relief

Plaintiff claims that he is seeking "injunctive and or declaratory relief" against Defendants in their official capacities, stating "holding these officers liable in their official capacities ... will set the precedent for future claims that will hold their officers that the state employed fully responsible for their actions...." (Dkt. 12 at ¶ 27) However, Plaintiff does not outline what specific injunctive relief he requests.

■ In any event, Plaintiff's request for injunctive relief against correction officers at Five Points Correctional Facility is moot in light of his transfer to Attica Correctional Facility. *See Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir.2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of

the transferor facility."); *Rosales v. Wright,* No. 10–CV–6044L, 2012 WL 87123, at *1 (W.D.N.Y. Jan. 11, 2012) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility ....") (quotation omitted).

Therefore, Plaintiff has failed to state a claim for injunctive relief and any such claim is dismissed.

### 2. Request for Monetary Damages

■ To the extent that Plaintiff seeks to assert claims against Defendants in their official capacities for monetary damages, those claims must be dismissed as barred by the Eleventh Amendment. "Claims against state employees in their official capacity are deemed claims against the state itself, and are barred by the Eleventh Amendment." *Coleman v. Beale,* 636 F.Supp.2d 207, 212 (W.D.N.Y. 2009).

### 3. Defendant Hardy's Motion to Dismiss

On February 23, 2015, Defendant Hardy tiled a motion to dismiss pursuant to Fed. R.Civ.P. 12 and to join in the previously-filed motion to dismiss/motion for summary judgment. (Dkt. 33). In support of this motion, Bernard F. Sheehan, Assistant Attorney General, filed a declaration stating that "Defendant Hardy recently requested representation and moved to join that part of Defendants' Motion to Dismiss that seeks dismissal of Plaintiff's official capacity claims." (Dkt. 33–1 at ¶¶ 4, 6).

For the same reasons the Court has dismissed Plaintiff's official capacity claims as against the other named Defendants, the Court also dismisses Plaintiff's official capacity claims against Defendant Hardy.

However, Plaintiff alleges that Defendant Hardy directly participated in the use

of excessive force by "assaulting [Plaintiff] by hitting [him] in [his] head, ribs, private parts, back, etc." as he was fully restrained and transported on a stretcher. (Dkt. 12 at ¶ 8). As discussed in greater detail below, Plaintiff has sufficiently alleged an excessive use of force claim. Accordingly, Defendant Hardy is not dismissed as a defendant in this case, but rather Defendant Hardy's motion to dismiss is granted only to the extent he seeks to dismiss the official capacity claims against him.

### C. Deliberate Indifference Claim as Against Defendant Sykes

Defendants seek to dismiss Plaintiff's deliberate indifference claim against Defendant Sykes, arguing that Plaintiff has failed to allege that Defendant Sykes had the required state of mind. (Dkt. 25–3 at 9). Plaintiff alleges that Defendant Sykes subjected him to cruel and unusual punishment in deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Dkt. 12 at 19–20). Specifically, Plaintiff claims that upon admission to CNYPC, Defendant Sykes removed Plaintiff's splint that had been prescribed by a doctor to treat his broken finger and denied Plaintiff a splint or cast to protect Plaintiff's injury, causing Plaintiff pain. (*Id.*).

[10] "The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment." *Jones v. Westchester ·Cnty. Dep't of Corrs. Med. Dep't,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008).

■ In order to successfully substantiate an Eighth Amendment claim for medical indifference, the plaintiff-inmate must prove that a defendant was deliberately indifferent to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct.

1970, 128 L.Ed.2d 811 (1994). This analysis contains an objective and a subjective component. *Wilson v. Seiter,* 501 U.S. 294, 298–99, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Defendants assume for the purposes of their motion that Plaintiff has alleged a serious medical need, and only contest Plaintiff's failure to sufficiently support the subjective element of his deliberate indifference· claim. (Dkt. 25–3).

■ Defendants argue that Plaintiff "received appropriate care while he was at CNYPC ... Nurse Sykes and the rest of the staff at CNYPC constantly monitored Plaintiff's various medical and mental health conditions, including the broken finger on his left hand, and [ ] they provided appropriate care." (*Id.* at 13). To support this claim, Defendants rely on the attached declaration of Defendant Sykes as well as Plaintiff's medical records. (*Id.* at 13–15). As noted above, these outside materials are not considered on a motion to dismiss. Accordingly, to sufficiently allege the subjective portion of his deliberate indifference claim, Plaintiff need only allege "facts showing that the defendant's actions constituted 'more than negligence, but less than conduct undertaken for the very purpose of causing harm.'" *Burton v. Lynch,* 664 F.Supp.2d 349, 365 (S.D.N.Y.2009) (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)).

Specifically, Plaintiff must allege that Defendant Sykes knew of a serious medical condition and nonetheless disregarded his medical needs. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970 (holding that a prison official does not act in a deliberately indifferent manner towards an inmate unless he "knows of and disregards an excessive risk to inmate health or safety").

■ "It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v.*

*Curcione,* 657 F.3d 116, 123 (2d Cir.2011). "[M]ere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998).

■ Plaintiff has alleged that Defendant Sykes was aware of Plaintiff's metacarpal fracture and removed Plaintiff's splint despite the fact that the splint had been prescribed by a doctor to wear for a number of weeks. (Dkt. 12 at ¶ 19). Plaintiff has further alleged that he was denied a splint or cast to aid in the healing of his broken finger from August 28, 2010, through December 10, 2010. (*Id.*). While it is possible that discovery will reveal that Plaintiff has only stated a "mere disagreement" over the proper medical treatment for his fractured metacarpal, he has alleged sufficient facts to survive a motion to dismiss his deliberate indifference claim.

### D. Freedom to Practice Religion Claim

Plaintiff alleges that he was denied his religious meals for more than seven consecutive days during Ramadan while he was held in an observation cell by "the prison officers assigned to [his] suicide watch." (Dkt. 12 at ¶¶ 17–18). Defendants argue that any religious claims should be dismissed because Plaintiff did not name any Defendants with respect to these claims, and failed to show personal involvement by any of the named Defendants. (Dkt. 25–3 at 17).

■ In his response papers, Plaintiff alleges that it was Defendant Jones who directed the denial of religious meals. (Dkt. 43 at 14). However, this information may not be considered in ruling on a motion to dismiss, "as a plaintiff may not supplement a deficient pleading through additional facts contained in affidavits." *New York v. Mountain Tobacco Co.,* 55 F.Supp.3d 301, 315 (E.D.N.Y.2014).

■ Because "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983," *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation omitted), Plaintiff's freedom to practice religion claim is dismissed.

■ However, "[a] *pro se* complaint should not be dismissed 'without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Gray–Davis v. New York,* No. 5:14–CV–1490 (GTS/TWD), 2015 WL 2120518, at *3 (N.D.N.Y. May 5, 2015) (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999)). "An opportunity to amend is not required where the problem with [the plaintiff's] causes of action is substantive' such that 'better pleading will not cure it.' " *Id.* (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000)).

Here, it appears that Plaintiff has failed to name the individual defendants involved in his freedom to practice religion claim, but has otherwise sufficiently alleged a claim. Thus, Plaintiff's claim is dismissed without prejudice with leave to file an amended complaint to cure the deficiencies in his pleading of the claim within the time limit set forth below.

### E. "Access to Courts" Claims

Defendants argue that because Plaintiff has not described any legal claim that was frustrated, nor has he linked any frustrated claim to any actions by Defendants, his access to courts claims should be dismissed. (Dkt. 25–3 at 16).

On October 7, 2013, the Court ordered Plaintiff to amend his complaint to sufficiently allege that he was prevented from

pursuing a legal claim due to the actions of specific Defendants. (Dkt. 8 at 7). The Court noted:

> To state a claim for denial of access to the Courts, plaintiff must show that he has suffered an actual injury due to the challenged conduct of prison officials. A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. *Lewis v. Casey,* 518 U.S. 343, 351–52, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Plaintiff must amend his complaint to show that he was prevented from pursuing a legal claim because of the actions of Corrections Officials. Plaintiff is reminded that he must demonstrate that each defendant he names was personally involved in the deprivations he seeks to hold them responsible for.

(*Id.* at 6–7).

Plaintiff has amended his complaint, but he does not state how any specific Defendants were involved in impeding his ability to seek redress with the courts. Plaintiff alleges that he filed a grievance on February 3, 2011, with respect to verbal threats made by Defendant Jones, but did not receive a response, so he filed an appeal on February 10, 2011, and was informed that his first grievance was never processed or recorded. (Dkt. 12 at ¶ 15). However, Plaintiff does not allege that any individual Defendant had a part in interfering with the filing of Plaintiff's grievance.

Because a liberal reading of the complaint gives an indication that a valid claim might be stated, and that better pleading may cure the deficiencies, Plaintiff's access to courts claim is dismissed without prejudice with leave to amend the complaint with respect to this claim within the time limit set forth below.

## F. Due Process Claim

Defendants contend that Plaintiff's due process claim should be dismissed because Plaintiff has failed to show involvement by any of the named Defendants in his allegations of due process and has only stated in a conclusory fashion that he was denied certain aspects of a disciplinary hearing without identifying the denial of any protected liberty interest. (Dkt. 25–3 at 17–18).

Defendants also assert that any claims against Defendant Rasmus must be dismissed as Plaintiff failed to make any factual allegations against Defendant Rasmus in his amended complaint. (*Id.* at 15). Plaintiff does note in his list of Defendants that "Mike Rasmus" was a "Hearing Officer," and does not name any other Defendants as hearing officers in his complaint. (Dkt. 12 at 2). Although Plaintiff does not name Defendant Rasmus in the paragraph related to his alleged denial of a fair and impartial disciplinary hearing, he does claim that he was "not provided with a fair & impartial hearing officer." (*Id.* at ¶ 22). Construing the complaint in the light most favorable to the *pro se* Plaintiff, the Court considers Defendant Rasmus to be the hearing officer to which Plaintiff refers in his due process claim.

"Prisoners are entitled to have their disciplinary charges reviewed by an unbiased hearing officer." *Brooks v. Prack,* 77 F.Supp.3d 301, 316 (W.D.N.Y. 2014). On the other hand, "[c]laims of hearing officer bias are common in § 1983 claims by inmates, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify,* 968 F.Supp.2d 532, 541 (W.D.N.Y.2013). "An inmate's own subjective belief that a hearing officer is biased is insufficient." *Brooks,* 77 F.Supp.3d at 316.

■ "Although an inmate facing disciplinary charges is not entitled to the full panoply of due process rights that one is entitled to in a criminal trial, there are nevertheless certain minimum procedural safeguards that must be provided under the Constitution. For example, an inmate subject to a disciplinary hearing is entitled to: (1) advance written notice of the charges against him; (2) the opportunity to call witnesses and present documentary evidence in his defense; and (3) a written statement of the evidence relied upon and the reasons for the disciplinary action." *Loret v. Selsky*, 595 F.Supp.2d 231, 233 (W.D.N.Y.2009) (quotation omitted). In this case, Plaintiff claims that he was denied a fair and impartial hearing officer. (*Id.*). Plaintiff alleges that he was denied the right to call certain witnesses at his August 16, 2010 disciplinary hearing, was not provided with witness refusal forms, and was found guilty based on various memoranda among which Plaintiff had identified contradictions. (*Id.*). Plaintiff has adequately alleged that the disciplinary hearing in question did not comport with due process.

■ However, Plaintiff has failed to sufficiently allege a due process claim because he has not alleged that he was denied a protected liberty interest.

■ "[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra*, No. 14–CV–6346L, 123 F.Supp.3d 419, 422, 2015 WL 5011976, at *1 (W.D.N.Y. Aug. 24, 2015).

Plaintiff claims that he was "found guilty with no substantial proof," but he does not state how the disciplinary action subjected him to further liberty deprivations. *See, Sira v. Morton*, 380 F.3d 57, 69 (2d Cir.

2004) ("Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship."); *see also J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir.2013) ("a prisoner has a liberty interest that is implicated by SHU confinement if it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). In other words, Plaintiff does not allege how he was punished following the disciplinary hearing, and has therefore failed to allege that he was denied a protected liberty interest.

"Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal 'unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.'" *Lewis v. Gowanda Corr. Fac.*, No. 15–CV–0168A, 2015 WL 5146997, at *2 (W.D.N.Y. Aug. 28, 2015) (quoting *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir.2007)). Here, it appears that if Plaintiff were to allege denial of a protected liberty interest, then Plaintiff may state a due process claim. Accordingly, Plaintiff's due process claim is dismissed without prejudice with leave to amend the complaint within the time limit set forth below.

### G. Excessive Use of Force and Failure to Intervene Claims

■ Defendants do not appear to seek dismissal of Plaintiff's excessive use of force claims as against Defendants Morton, Hill, Farley, Hardy, Parish, and Cavalussi, or Plaintiff's failure to intervene claims as against Defendants Morton and Jones. (Dkt. 12 at ¶¶ 8–12). Plaintiff claims that he was fully shackled and

placed on a stretcher when these Defendants used excessive force by hitting Plaintiff on his "head, ribs, private parts, back, etc." while two of the Defendants held Plaintiff down. (*Id.* at ¶ 8). Plaintiff further asserts that Defendant Hill pulled his fingers apart until his "hand snapped and broke." (*Id.*). Additionally, Plaintiff has sufficiently alleged that Defendants Morton and Jones were present for the alleged use of excessive force, had the opportunity to intervene, and nonetheless allowed the alleged assault to occur. (*Id.* at ¶ 12). Thus, Plaintiff may continue to pursue his claims for excessive use of force and failure to intervene.

### III. Plaintiff's Motion to Compel Discovery

On February 23, 2015, Plaintiff filed a motion to compel discovery. (Dkt. 34). Plaintiff noted that he had alleged sufficient grounds in his amended complaint, "[h]owever, the Defendant counsel wish to get my amended complaint dismissed pursuant to rule 12(b), and rule 56 of the Fed. R. Civ. P...." (*Id.* at 1). Plaintiff requested the opportunity to proceed with discovery in order to properly address the motion for summary judgment, particularly to address the "culpable state of mind of Ms. A. Sykes, and Defendant M. Rasmus, as well as the others." (*Id.*).

Plaintiff's motion to compel discovery is denied as moot in light of the Court's decision in this case. Because Plaintiff's claims of deliberate indifference to a serious medical need, excessive use of force, and failure to intervene remain, the next step is for the parties to engage in discovery.

### IV. Plaintiff's Motion to Appoint Counsel

On June 29, 2015, Plaintiff filed a motion to appoint counsel to represent him in the instant matter. (Dkt. 45). Pursuant to 28 U.S.C. § 1915(e)(1), courts have the inherent authority to assign counsel to represent private indigent litigants. "There is no requirement that an indigent litigant be appointed *pro bono* counsel in civil matters, unlike most criminal cases." *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994).

"The factors to be considered in ruling on a motion for the appointment of counsel include the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel.'" *Pennington v. City of Rochester,* No. 13–CV–6304, 2014 WL 3894599, at *1 (W.D.N.Y. Aug. 8, 2014) (quoting *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989)).

Here, Plaintiff notes that he has qualified for *in forma pauperis* status and is unable to hire an attorney to represent him. (Dkt. 45 at 2, 7). In support of his motion, Plaintiff attaches several letters, purportedly from various law firms, declining to represent Plaintiff in the instant matter. (*Id.* at 47–58). Plaintiff claims that this is a complex case due to the fact that he is raising "several different legal claims" and that each claim involves different defendants. (*Id.* at 1, 6). He notes that he has a serious mental illness that "prevents him from fully litigating this matter." (*Id.* at 2). He also contends that the case involves medical issues that may require expert testimony. (*Id.* at 2, 6). Further, Plaintiff claims that he has "very limited access" to legal materials because he is housed in a residential mental health unit. (*Id.* at 3, 7).

Plaintiff's motion to appoint counsel is granted. It is evident that Plaintiff is unable to retain counsel to assist him in litigating his remaining claims. As the case is now entering discovery, it may be

difficult for Plaintiff to conduct discovery, particularly in light of his mental health status. Plaintiff has alleged claims against eight named defendants, which will require significant factual discovery. Further, Plaintiff's claim of deliberate indifference to his medical needs may require the acquisition of medical expert testimony. In totality, these facts warrant the appointment of *pro bono* counsel to represent Plaintiff in this case. *See Alli v. Steward–Bowden*, No. 11 Civ. 4952(PKC)(KNF), 2012 WL 4053693, at *2 (S.D.N.Y. Sept. 11, 2012) (appointing counsel where the plaintiff's claims implicated liability for officers and supervisors, involved deliberate indifference claims that may require expert testimony, and the plaintiff was incarcerated with limited resources).

Each lawyer—especially those who are admitted to practice in federal court and who therefore are in a position to reap the benefits of such practice—has a professional obligation to provide *pro bono* services for the poor. *See* New York Rules of Professional Conduct, Rule 6.1. In addition, the Local Rules of Civil Procedure provide as follows:

> Every member of the bar of this Court who maintains, or whose firm maintains, an office in this District, shall be available upon the Court's request for appointment to represent or assist in the representation of indigent parties. Appointments under this Rule shall be made in a manner such that no Member shall be requested to accept more than one appointment during any twelve-month period.

L.R. Civ. P. 83.1(f).

It is in this spirit that the Court directs the *Pro Se* Office to assign counsel, *pro bono*, to faithfully and diligently represent Plaintiff in this case.

## CONCLUSION

Defendants' motion, to the extent it seeks summary judgment, is denied without prejudice. Defendants' motion to dismiss (Dkt. 25) is granted in part and denied in part. Specifically, the Court dismisses Plaintiff's official capacity claims with prejudice, and the claims related to access to courts, freedom to practice religion, and due process are dismissed without prejudice with leave to amend the complaint within thirty days of the appointment of counsel. Defendant Hardy's motion to dismiss Plaintiff's official capacity claim (Dkt. 33) is granted. Plaintiff's motion to compel discovery (Dkt. 34) is denied as moot.

Plaintiff's motion to appoint counsel (Dkt. 45) is granted and the Court directs the *Pro Se* Office to assign counsel, *pro bono*, to faithfully and diligently represent Plaintiff in this case.

As set forth above, Plaintiff may, within thirty days of appointment of counsel, file an amended complaint in order to cure the deficiencies raised in this Decision and Order with respect to his "Access to Courts," "Freedom to Practice Religion," and "Due Process" claims.

SO ORDERED.